**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**RAYMOND A. TWYFORD, III**

    **Petitioner,**      **Case No. 2:03cv906**

  **v.**            **JUDGE MARBLEY**
                 **Magistrate Judge Deavers**

**MARGARET BRADSHAW,**

    **Respondent.**


## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court

a habeas corpus action pursuant to 28 U.S.C. § 2254.   This matter is before the Court for

consideration of Respondent's motion to dismiss procedurally defaulted claims, ECF No. 78,

Petitioner's response in opposition, ECF No. 79, Respondent's Reply, ECF No. 80, and

Petitioner's notice of supplemental authority, ECF No. 85.   Also before the Court are the habeas

corpus petition, ECF No. 13, the state court record, and the joint appendix.   This Opinion and

Order will address whether any of Petitioner's claims for relief must be dismissed because they

were procedurally defaulted during the course of the state court proceedings, and whether

Petitioner has successfully demonstrated the existence of cause and prejudice sufficient to excuse

any such default.

### I.   Factual History

The relevant underlying facts are taken from the Supreme Court of Ohio's Opinion,

*State v. Twyford*, 94 Ohio St. 3d 340 (2002):

> In the early evening hours of September 23, 1992, Athena Cash was walking in a
> rural area in Jefferson County, Ohio. After traversing the crest of a hill, Cash
> noticed an object floating in an old strip-mining pond. Although it appeared to be in

1

the shape of a human body, Cash was uncertain whether the object was, in fact, human. Cash subsequently summoned her boyfriend to view the object, and he concluded that the object was a human body. As a result, the couple contacted local law enforcement authorities.

Law enforcement personnel, including Jefferson County Sheriff Fred Abdalla, responded to the scene and found parts of a skull and flesh on the ground. Some seventy-four feet away, the sheriff saw a body lying on its back in the body of water. On the shore, the sheriff also found blood, a pair of glasses, a baseball cap, and six shell casings fired from a .30–06–caliber rifle.

While the body was floating in the pond, Sheriff Abdalla observed that it appeared "as if the head was cut off" and also noticed that "the hands were severed from the body." Once the body was removed from the water, it was determined that part of the face was still attached but that the skull was missing. Abdalla also discovered that the victim had been shot in the back. At the scene, Dr. John Metcalf, the Jefferson County Coroner, observed the same injuries. In addition, Dr. Metcalf found a pocket calendar diary inside the victim's shirt pocket. The victim's name, Richard Franks, as well as a Windham, Ohio address, was written in the diary.

On September 24, 1992, after contacting the Windham Police Department and receiving information that Franks had been missing for two days, Sheriff Abdalla traveled to the village of Windham in Portage County, Ohio. Prior to Sheriff Abdalla's arrival, Windham Chief of Police Thomas Denvir decided to place Franks's apartment under surveillance. Chief Denvir had discovered that Daniel Eikelberry lived with Franks, and while surveilling the apartment, Chief Denvir observed Eikelberry and Raymond A. Twyford III, appellant, in an automobile belonging to Joyce Sonny, appellant's girlfriend.

Sheriff Abdalla arrived in Windham and at approximately 4:50 p.m. met local police officials, including Chief Denvir. Around 5:30 p.m. that same afternoon, while Sheriff Abdalla and Chief Denvir waited outside Franks's apartment for a warrant to enter the premises, appellant, accompanied by Eikelberry and Terri Sonny, Joyce's daughter, again drove by in Joyce Sonny's car. Appellant lived with Joyce Sonny and her daughters, Christina, age eighteen, and Terri, age thirteen, in Windham.

At that time, and at Sheriff Abdalla's request, Chief Denvir stopped the car to talk with Eikelberry about his missing roommate, Franks. As appellant got out of Joyce's 1975 Chrysler sedan, Abdalla noticed "two survival knives, a hatchet and a small * * * hand saw" in the car. Appellant, who was not detained, waited outside Franks's house while Abdalla questioned Eikelberry at the police station.

After interviewing Eikelberry, Sheriff Abdalla arrested appellant at around 6:25 p.m. for the murder of Richard Franks and advised appellant of his Miranda rights.

After declining to be interviewed, appellant was taken to the Windham Police Department and held while police continued to question Eikelberry. At around 7:15 p.m., appellant on his own initiative indicated that he would like to speak to Sheriff Abdalla and told him, "[S]heriff, I want to talk to you now, I'll tell you anything you want to know." Sheriff Abdalla, however, did not talk to appellant right away. Around 8:30 p.m., Abdalla again advised appellant of his Miranda rights, and appellant acknowledged and waived those rights, both orally and in writing.

Appellant told Sheriff Abdalla and Chief Denvir that he lived with Joyce Sonny and her two daughters, Christina and Terri. On Saturday, September 19, two days prior to the murder, Eikelberry told appellant that Franks had raped Christina. After learning this, appellant said that he was very angry and that every time he thought of Franks or saw him he "saw red and started to shake."

Appellant told Sheriff Abdalla that after learning of the rape, he and Eikelberry decided to kill Franks. The two of them drove around with Franks on Sunday evening, September 20. Appellant said, however, that he and Eikelberry could not find a suitable place to kill Franks. On Monday evening, September 21, on the pretext that they were going deer hunting, appellant, Eikelberry, and Franks drove to Jefferson County, arriving at around 1:00 or 2:00 a.m., September 22. Appellant was familiar with the area and had suggested this as the locale for the killing.

According to appellant, he and Eikelberry told Franks to hold a flashlight, look for deer, and "hold the light in the eye of the deer," and appellant and Eikelberry would shoot the deer. Instead, as Franks walked off and was ten to twelve feet away, appellant shot him in the back with a .30–06–caliber rifle. After he fell down, Franks was still "gurgling," and Eikelberry shot Franks in the head with a .22 caliber pistol.

Appellant and Eikelberry then repeatedly shot Franks in the head with the rifle and also shot his hands. Appellant also "took the wallet from Mr. Franks" and handed it to Eikelberry, and Eikelberry removed the hunting license from Franks's jacket. "[A]fter they [Eikelberry and appellant] had cut [Franks's] hands off, they took the hands and put them in a * * * cowboy boot and * * * put some rocks in the boot to weigh it down and * * * [ran] the extension cord * * * around the boot." They shot Franks several times "to disfigure him so he couldn't be recognizable." Then "they both [dragged] the body * * * to the embankment * * * [and] shoved the body over the bank."

Appellant further said that after leaving the scene of the murder, Eikelberry threw the boot containing Franks's hands into Yellow Creek (some eighteen miles away). On September 25, divers recovered the boot (which contained the hands) from Yellow Creek where appellant reported that it had been thrown.

After he orally confessed to the murder, appellant wrote out details in a three-page handwritten statement that he signed. Chief Denvir and Sheriff Abdalla witnessed appellant's statement.

Based upon other information from appellant's confession, police recovered from behind a vent off Joyce Sonny's living room a loaded "high-powered" .30–06–caliber rifle and a .22 caliber handgun loaded with "hollow point" ammunition. Two knives were also found. Both guns were operable. A parole officer verified that appellant had previously been convicted of burglary and hence was "restricted from owning, possessing or using any type of firearm."

The grand jury indicted appellant on five counts. Count One alleged aggravated murder with prior calculation and design in violation of R.C. 2903.01(A) and aggravated murder in the course of a kidnapping in violation of R.C. 2903.01(B). Count One of the indictment also charged appellant with an R.C. 2929.04(A)(7) death penalty specification for committing aggravated murder during the course of a kidnapping. Count Two alleged an aggravated murder with prior calculation and design in violation of R.C. 2903.01 and aggravated murder in the course of aggravated robbery in violation of R.C. 2903.01(B). Count Two also charged appellant with an R.C. 2929.04(A)(7) death penalty specification of committing aggravated murder during the course of committing an aggravated robbery. Count Three alleged kidnapping, Count Four alleged aggravated robbery, and Count Five alleged that appellant had a weapon while under disability. Counts One through Four contained gun specifications. Counts Three and Four also contained specifications enhancing the penalty, and these alleged that appellant had previously been convicted of burglary.

Prior to trial, appellant moved to suppress his confession. A hearing was held on the motion to suppress wherein appellant testified that his confession was an involuntarily coerced statement made under duress and threat by law enforcement officers. Appellant further alleged that his confession was made while he was under the influence of narcotics and alcohol. The trial court denied the motion to suppress.

During his 1993 trial, appellant pled not guilty but otherwise did not seriously contest the charges and presented no evidence at the guilt phase. In addition to the foregoing evidence obtained from appellant's confession, the state presented the following evidence as part of its case in chief.

A forensics expert concluded that cartridge casings found at the murder scene could have been fired from the rifle seized from Joyce's living room "based upon the breech and firing pin impressions." Police also dug two bullets from the ground at the crime scene. According to the same expert, those bullets could have been fired from the rifle, but no conclusive match was shown.

Dr. Patrick Fardal, the pathologist who performed the autopsy, indicated that the victim had suffered "approximately six to eight gunshot wounds of his body including his head and hands." Dr. Fardal found a gunshot wound, "obviously a fatal injury," where the bullet had entered Franks's back, had gone through his spinal cord, and had caused paralysis below the waistline and "injuries to multiple abdominal organs" before it then exited his abdomen. Franks also had bullet wounds in his severed hands, and his head sustained "massive destruction of his skull, the skin of his face and the intracranial contents." According to Dr. Fardal, Richard Franks "died solely and exclusively of gunshot wounds * * * and probably the most significant one was the one to the trunk first and then the ones to the head."

The jury found appellant guilty of all counts as charged. However, the findings on specifications enhancing the penalty were reserved for the court. After a penalty hearing, the jury recommended death on each aggravated murder charge. The trial court sentenced appellant to death on each murder count and to prison for kidnapping, aggravated robbery, having a weapon while under disability, and the firearms specifications.

*Twyford*, 94 Ohio St. 3d at 340-43.

Further into its opinion, the Ohio Supreme Court set forth the facts underlying Petitioner's

mitigation case as follows:

Having considered appellant's propositions of law, we must now independently review the death sentence for appropriateness and proportionality (also raised in appellant's Proposition of Law No. IV). For purposes of our independent review, we will consider only the single (merged) aggravating circumstance that was considered by the court of appeals in its own independent review of appellant's death sentence. Thus, we consider the R.C. 2929.04(A)(7) specification of the aggravating circumstance premised on kidnapping—i.e., that appellant shot and killed Richard Franks during the course of a kidnapping—which appellant does not seriously dispute.

In mitigation, testimony was received from three people: appellant, Dr. Donald Gordon, a psychology professor, and Charles Twyford, appellant's younger brother. Each testified concerning appellant's history, character, and background.

Appellant testified that he was born on October 15, 1962, in Youngstown, Ohio. When he was an infant, his parents divorced. During this time, his father took appellant and his younger brother to live in Nevada. At around age six, appellant's grandparents returned him to Ohio, where he lived with his mother and stepfather. Appellant's stepfather frequently got drunk and beat appellant, his younger brother, and his mother. Appellant's biological father died when he was seven years old.

5

When appellant was eight, his mother had a nervous breakdown, which the stepfather blamed on appellant. Appellant was subsequently sent to live with an aunt and uncle in Youngstown. While otherwise kind to appellant, the uncle also introduced appellant to alcohol and marijuana. Between the ages of nine and thirteen, appellant drank alcohol and used drugs. When he was thirteen, he intentionally shot himself in the head and lost his right eye as a result. During the rest of his teen years, he spent time in juvenile detention facilities.

After he turned eighteen, appellant lived and worked in Ohio, Texas, Florida, and California, spending time in prison but also working in a variety of jobs. While in juvenile detention facilities and in prison, he tried to kill himself several times and was hospitalized as a result. After his last release from prison in 1992, his wife and stepdaughter refused to live with him. At that time, he was drinking heavily and using drugs.

Appellant also testified that he did not like rapists or child molesters, having been raped in prison. Appellant noted that even before he met Joyce Sonny, Christina had already had a baby as a result of being raped, but Christina and Joyce had given the baby up for adoption. Appellant also indicated that he learned in prison that it did not help to complain to authorities.

Appellant additionally acknowledged that Christina was "mentally disabled" but denied knowing that Richard Franks was similarly challenged. Appellant claimed that he got into fights or used violence only for self-defense or to defend women or children. Appellant denied that he was sexually active with either Terri or Christina but admitted that he once gave Terri a sucker bite on her neck to punish her.

Dr. Donald Gordon, a psychology professor, testified that he interviewed appellant, gave him several tests, interviewed appellant's relatives, and looked at various documents. Dr. Gordon reiterated appellant's family history and upbringing, noting the severe mistreatment he suffered at the hands of his stepfather. According to Dr. Gordon, the abuse was so severe that finally, when appellant was fifteen, he told his stepfather that he would kill him if he ever beat up appellant's mother again. Dr. Gordon also testified that, as a youth, appellant frequently ran away and was suspended from school. From age seventeen to twenty-eight, appellant spent time in prison but also was able to gain employment when he was not incarcerated.

Dr. Gordon indicated that appellant hated child molesters and rapists based on his experiences while incarcerated. In Dr. Gordon's opinion, appellant did not trust people and believed that they overlooked the welfare of children. Appellant felt that he had to be the protector of children, especially Christina and Terri Sonny. According to Dr. Gordon, appellant was not a violent person, and his prior offenses

were property crimes, not crimes of violence.   Moreover, Dr. Gordon testified that appellant believed that Franks would not be punished for raping Christina, just as the men who had raped him in prison had not been punished.   Also, if appellant was caught for killing Franks, then no one would take care of Joyce's children, since she was not able to do so.   Dr. Gordon believed that law enforcement officers may have unduly influenced or coerced the Sonny children's statements about appellant's reported sexual misconduct of them.   In Dr. Gordon's view, appellant was compassionate and felt empathy for others.   Finally, in Dr. Gordon's opinion, appellant was not a sociopath, nor did he have an antisocial personality disorder.

Charles Twyford, appellant's younger brother, described life with their stepfather as frightening because their stepfather got drunk and beat up their mother and the children every week.   According to Charles, as a youth, appellant ran away frequently because he did not want to be beaten.   Charles did not believe that his brother was violent and indicated that his brother was arrested mostly for property crimes.   Charles stated that appellant was good with children, including Terri and Christina, and children liked him.

Appellant also gave his version of the events leading up to and including the murder of Richard Franks.   In the summer of 1992, appellant met Joyce Sonny and her two daughters and moved in with them. According to appellant, he felt "very protective" of Joyce's daughters and helped care for them, especially after Joyce was hospitalized in August 1992 following a motorcycle accident.

Richard Franks was a friend of Joyce's, but appellant never trusted him.   When he was told that Franks had raped Christina, appellant was "shocked" and "couldn't see, * * * started shaking" and was very angry. According to appellant, Christina told appellant directly that Franks had raped her, and she was "very subdued, very quiet, [and] she didn't want to talk."

Appellant further testified that he had told Eikelberry that he was "going to kill Richard Franks for raping [his] stepdaughter" because appellant "didn't think it would do any good to go to the police."   He had to kill Franks to protect the family. Appellant reiterated the details of his confession but stressed that when he killed Franks, he was "still angry, * * * in a rage," drinking heavily, and taking pain medication.   Appellant acknowledged that he never confronted Franks about his alleged rape of Christina, but he believed that Franks had raped Christina and had to be killed to protect the family.

*Twyford*, 94 Ohio St. 3d at 364–67.

## II.    State Court History

### A.   Trial

On October 8, 1992, the Jefferson County Grand Jury indicted Petitioner for the aggravated murder, kidnapping, and aggravated robbery of Richard Franks.   Specifically, Count One charged Petitioner with aggravated murder during the course of a kidnapping in violation of O.R.C. § 2903.01 and included a corresponding death penalty specification.   Count Two charged Petitioner with aggravated murder during the course of an aggravated robbery with a corresponding death penalty specification.   Count Three charged Petitioner with kidnapping, Count Four charged him with aggravated robbery, and Count Five charged him with possessing a weapon while under disability due to his prior felony conviction for burglary.   Counts Three and Four contained a sentencing enhancement specification based on the prior burglary conviction.   (J.A. Vol. I, at 12-16.)

On March 23, 1993, and represented by Attorneys Adrian Hershey and David Vukelic, the jury trial began.   On March 26, 1993, and after approximately two hours of deliberation, the jury returned a verdict of guilty on all counts and death penalty specifications.   The penalty phase of Petitioner's trial began on March 31, 1993, and concluded on April 1, 1993.   After approximately two hours of deliberation, the jury returned a unanimous recommendation of death.   On April 7, 1993, the trial court accepted the jury's recommendation and sentenced petitioner to death. Petitioner was also sentenced to 15-25 years for aggravated robbery, 15-25 years for kidnapping, three years for the gun specification, and three years for possessing a firearm while under disability, all to be served consecutively.

### B.   Direct Appeal – Seventh District Court of Appeals

Represented by Attorneys Milton Hayman and James McKenna, Petitioner appealed his

conviction and sentence of death to the Seventh District Court of Appeals. On April 19, 1994,

Petitioner filed an appellate brief setting forth only three assignments of error:

> Assignment of Error No. 1:
> The Court erred when it permitted testimony about the Defendant's prior criminal
> record allowing the record to be introduced and admitted into evidence.
>
> Assignment of Error No. 2:
> The Court erred in allowing the State to display highly inflammatory evidence on
> its counsel table in view of the Jury, when said objects were never intended to be
> introduced as evidence.
>
> Assignment of Error No. 3:
> Ineffective assistance of counsel.

(J.A. Vol. II, at 44.)

On October 6, 1995, the Seventh District Court of Appeals rejected Petitioner's

assignments of error and affirmed his conviction and sentence of death. (J.A. Vol. II, at

115-138.)

### C. Direct Appeal to Ohio Supreme Court and Rule 26(B) Application for Reopening

On November 20, 1995, Attorneys Hayman and McKenna filed a notice of appeal

to the Ohio Supreme Court, (J.A. Vol. III, at 3), and on December 18, 1995, they filed a

motion to withdraw as counsel for Petitioner. (J.A. Vol. III, at 16.) On December 22,

1995, the Ohio Supreme Court granted the motion to withdraw and appointed the Ohio

Public Defender's Office to serve as appellate counsel. (J.A. Vol. III, at 21.)

Now represented by Attorneys Joseph Bodine and Tracey Leonard of the Ohio

Public Defender's Office, and while his direct appeal before the Ohio Supreme Court was

pending, Petitioner filed an application to reopen his direct appeal before the Seventh

District Court of Appeals, pursuant to Ohio Appellate Rule 26(B), also known as a

9

*Murnahan* petition, which is the procedure in Ohio for raising claims of ineffective assistance of appellate counsel. (J.A. Vol. IX, at 27.) The *Murnahan* petition identified multiple potentially meritorious claims that were apparent from the face of the record but were not raised by prior appellate counsel. (*Id.*) On January 2, 1997, the court of appeals granted the application for reopening, (J.A. Vol. IX, at 225), and on January 10, 1997, Petitioner filed a motion to stay his direct appeal before the Ohio Supreme Court pending the resolution of the reopened appeal in the court below. (J.A. Vol. IV, at 420.) On January 13, 1997, the Ohio Supreme Court stayed the direct appeal and transferred the record back to the Seventh District Court of Appeals for further proceedings in connection with the granting of Petitioner's application to reopen his appeal before that court. (J.A. Vol. IV, at 436.)

On the reopening of his direct appeal before the Seventh District Court of Appeals, and in a merit brief filed on March 3, 1997, Petitioner argued that his initial appellate attorneys, Milton McKenna and James Hayman, performed deficiently and to his prejudice in failing to raise the following twenty-five assignments of error:

ASSIGNMENT OF ERROR NO. I
Appellate counsel's direct appeal representation before this court deprived Mr. Twyford of the effective assistance of appellate counsel as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I §§ 9, 10, AND 16 of the Ohio Constitution.

ASSIGNMENT OF ERROR NO. II
Morgan v. Illinois, 504 U.S. 719 (1992), mandates that a capital defendant be permitted to "life-qualify" potential jurors by inquiring into their view about capital punishment, the facts and circumstances the crime and the evidence to be presented in mitigating. Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 10 AND 16 of the Ohio Constitution.

ASSIGNMENT OF ERROR NO. III

The trial court erroneously instructed the jury at the penalty phase regarding the factors to consider in recommending punishment, and it independently considered more than one valid aggravating circumstance. Consequently, Appellant Twyford was denied the right to a fair trial, the right to a reliable sentencing determination, and the right to due process of law. Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 9, 10 and 16 of the Ohio Constitution.

ASSIGNMENT OF ERROR NO. IV
When a juror is replaced with an alternate juror between the guilt and penalty phases of a trial, a capital defendant may not be sentenced to death. Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, §§ 1, 2, 3, 5, 10 and 16 of the Ohio Constitution. Ohio Rev. Code Ann. § 2929.03(d)(2) (Anderson 1993).

ASSIGNMENT OF ERROR NO. V
The trial court erred, in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 9, 10 and 16 of the Ohio Constitution, by sentencing a capital defendant to death when the death sentence is excessive and disproportionate to the sentences imposed in similar cases.

ASSIGNMENT OF ERROR NO. VI
Mr. Twyford's statement to police officials was involuntarily and unknowingly obtained. The trial court's failure to suppress the statement denied Mr. Twyford his rights to a fair trial, due process and a reliable determination of his guilt and sentence as guaranteed by the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, as well as Article I, §§ 2, 9, 16 and 20 of the Ohio Constitution.

ASSIGNMENT OF ERROR NO. VII
The trial court erred by failing to inquire *sua sponte* into the issue of appellant's competency pursuant to Ohio Rev. Code Ann. § 2945.37 prior to the commencement of trial in deprivation of the appellant's right to due process of law as guaranteed by the fifth and fourteenth amendments of the United States Constitution, and Article I, §§ 9, 10 and 16 of the Ohio Constitution.

ASSIGNMENT OF ERROR NO. VIII
Raymond Twyford's convictions must be reversed and his death sentence vacated because prosecutorial misconduct throughout all phases of the capital trial violated his right to due process under the Fourteenth Amendment to the United States Constitution and Article I, § 16 of the Ohio Constitution, and it deprived the sentencing determination of the reliability required by the Eighth Amendment to the United States Constitution and Article I, § 9 of the Ohio Constitution.

ASSIGNMENT OF ERROR NO. IX
The state failed to introduce sufficient evidence to prove all the elements of aggravated robbery beyond a reasonable doubt, and therefore, appellant was deprived of his right

to due process of law under the Fourteenth Amendment to the United States Constitution as well as Article I, § 16 of the Ohio Constitution.

## ASSIGNMENT OF ERROR NO. X

It was error under the rule of corpus delicti to allow introduction of appellant's confession absent independent evidence to corroborate the crimes charged. This violated the appellant's rights under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution as well as Article I, §§ 9 and 16 of the Ohio Constitution.

## ASSIGNMENT OF ERROR NO. XI

A capital defendant is denied a fair trial and a reliable sentencing determination when gruesome and cumulative photographs are admitted into evidence. Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 and 16 of the Ohio Constitution.

## ASSIGNMENT OF ERROR NO. XII

When the state fails to show with reasonable certainty that real evidence offered at trial is in substantially the same condition as it was at the time of the crime and when it was analyzed by the state's forensic laboratory, the admission of such evidence violated the capital defendant's rights to due process, a fair trial, a reliable guilt verdict, and effective assistance of counsel under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 1, 5, 9, 10 and 16 of the Ohio Constitution.

## ASSIGNMENT OF ERROR NO. XIII

The trial court erred to the prejudice of Appellant Twyford by allowing the prosecutor to preempt jurors with reservations about the death penalty. Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 5, 10, and 16 of the Ohio Constitution.

## ASSIGNMENT OF ERROR NO. XIV

The trial court abused its discretion by permitting a witness to testify after violating the court's order to separate witnesses pursuant to Ohio R. Evid. 615. As a result, the appellant was denied his right to due process under the Fourteenth Amendment to the United States Constitution and Article I, §§ 9 and 16 of the Ohio Constitution.

## ASSIGNMENT OF ERROR NO. XV

The trial court erred by overruling the appellant's motion for a mistrial based on inadmissible evidence having not been presented to the jury in violation of the appellant's rights as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution Article I, §§ 9 and 16 of the Ohio Constitution, and Ohio R. Evid. 401, 402 and 403.

## ASSIGNMENT OF ERROR NO. XVI

A trial court denies a capital defendant the right to a fair trial and to due process of law when it erroneously instructs the jury during the trial and penalty phases of a capital case.

ASSIGNMENT OF ERROR NO. XVII

When pre-trial publicity pervades the community in which a capital trial is to be held, it is an abuse of discretion for the trial court to deny the defendant's motion for a change of venue.

ASSIGNMENT OF ERROR NO. XVIII

When the trial court does not permit a witness to testify about capital defendant's ability to peacefully live in prison, the trial court diminishes the liability of the jury's determination that death was the appropriate punishment in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 5, 9, 10, 16 and 20 of the Ohio Constitution.

ASSIGNMENT OF ERROR NO. XIX

Defense counsel's actions and omissions at Mr. Twyford's capital trial deprived him of the effective assistance of trial counsel as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 9, 10 and 16 of the Ohio Constitution.

ASSIGNMENT OF ERROR NO. XX

When the record before the court of appeals is incomplete, a sufficient review of the record pursuant to Ohio Rev. Code Ann. § 2929.05 cannot be conducted. U.S. Const. Amend. XIV; Ohio Const. Art. I, §§ 1, 2, 3, 5, 10 and 16.

ASSIGNMENT OF ERROR NO. XXI

When a capital defendant is sentenced to die twice for one killing, and receives additional sentences for two allied offences, his sentences violate the prohibition against double jeopardy of the United States and Ohio Constitutions as well as Ohio Revised Code § 2941.25.

ASSIGNMENT OF ERROR NO. XXII

The court of appeals erred in violation of the Fourteenth Amendment of the United States Constitution when, in the case of a capital appellant, it limited the pool of cases for sentencing comparison to only those cases in which the death penalty was imposed.

ASSIGNMENT OF ERROR NO. XXIII

The trial court erred by denying the right to a fair trial, an impartial jury and to reliable sentencing determination when it permitted the state to introduce evidence of appellant's prior criminal acts during the culpability phase of the proceedings.

ASSIGNMENT OF ERROR NO. XXIV

The trial court erred by sentencing Mr. Twyford to death in violation of treaties to which the United States of America is a signatory in violation of the supremacy clause of the United States Constitution.

ASSIGNMENT OF ERROR NO. XXV

Ohio's statutory scheme for the imposition of the death penalty is unconstitutional as drafted and as applied.

(J.A. Vol. X, at 8-303).   The State filed a response on April 21, 1997, (J.A. Vol. XI, at 273).   On September 25, 1998, the Seventh District Court of Appeals rejected the additional assignments of error presented in the reopened direct appeal, and affirmed Petitioner's convictions and sentence. *See State v. Twyford*, No. 93-J-13, 1998 WL 671382 (Ohio App. 7th Dist. Sept. 25, 1998) (J.A. Vol. XII, at 38-159.)

On November 6, 1998, and still represented by the Ohio Public Defender's Office, Petitioner filed a notice of appeal in the Ohio Supreme Court.   The Ohio Supreme Court consolidated the appeals of both Seventh District Court of Appeals' decisions, and the case was re-briefed.   (J.A. Vol. XIII, at 3.)   On March 1, 1999, Petitioner filed a merit brief raising the following thirteen propositions of law:

PROPOSITION OF LAW NO. I
Morgan v. Illinois, 504 U.S. 719 (1992), mandates that a capital defendant be permitted to voir dire potential jurors on their views of capital punishment, fact and circumstances of conviction and evidence of mitigating circumstances. Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 10 and 16 of the Ohio Constitution.

PROPOSITION OF LAW NO. II
When a trial court erroneously instructs a jury at the penalty phase regarding the factors to consider in recommending punishment and when it independently considers more than one valid aggravating circumstance, a capital defendant is denied the right to a fair trial, the right to a reliable sentencing determination, and the right to due process of law. Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 9, 10 and 16 of the Ohio Constitution.

PROPOSITION OF LAW NO. III
Where the trial court does not permit a witness to testify about capital defendant's ability to peacefully live in prison, the trial court diminishes the reliability of the jury's determination that death was the appropriate punishment, in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 5, 9, 10, 16 and 20 of the Ohio Constitution.

PROPOSITION OF LAW NO. IV

When the death sentence is excessive and disproportionate to the sentences in similar cases and when it is inappropriate, the death sentence must be vacated and a life sentence imposed. Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 9, 10 and 16 of the Ohio Constitution.

## PROPOSITION OF LAW NO. V

The state failed to introduce sufficient evidence to prove all elements of aggravated robbery beyond a reasonable doubt, and therefore, appellant was deprived of his right to due process of law under the fourteenth amendment of the United States Constitution as well as Article I, Section 16 of the Ohio Constitution.

## PROPOSITION OF LAW NO. VI

Raymond Twyford's convictions must be reversed and his death sentence vacated because prosecutorial misconduct throughout all phases of the capital trial violated appellant's rights to due process under the Fourteenth Amendment to the United States Constitution and Article I, § 16 of the Ohio Constitution, and it deprived the sentencing determination of the reliability required by the Eighth Amendment to the United States Constitution and Article I, § 9 of the Ohio Constitution.

## PROPOSITION OF LAW NO. VII

A capital defendant is denied a fair trial and a reliable sentencing determination when gruesome and cumulative photographs are admitted into evidence. Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 10 and 16 of the Ohio Constitution.

## PROPOSITION OF LAW NO. VIII

When the trial court permits evidence of prior criminal acts, it denies a capital defendant the right to a fair trial, an impartial jury, and to a reliable sentencing determination in violation of the sixth and fourteenth amendments to the United States Constitution and Article I, §§ 2, 5 and 10 of the Ohio Constitution.

## PROPOSITION OF LAW NO. IX

The trial court erred when it failed to suppress Twyford's statement because the Miranda waiver was obtained unknowingly, and the confession was the product of coercion. The trial court's action denied Twyford his rights to a fair trial, due process and a reliable determination of his guilt and sentence as guaranteed by the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, as well as Article I, §§ 2, 9, 16 and 20 of the Ohio Constitution.

## PROPOSITION OF LAW NO. X

When a juror is replaced with an alternate juror between the guilt and penalty phases of a trial, a capital defendant may not be sentenced to death. Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, §§ 1, 2, 3, 5, 10 and 16 of the Ohio Constitution. Ohio Rev. Code Ann. § 2929.03(d)(2) (Anderson 1993).

## PROPOSITION OF LAW NO. XI

Defense counsel's actions and omissions at Twyford's capital trial deprived him of the effective assistance of trial counsel as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 9, 10 and 16 of the Ohio Constitution.

PROPOSITION OF LAW NO. XII
A trial court denies a capital defendant the right to a fair trial and to due process of law when it erroneously instructs the jury during the trial and penalty phases of a capital case.

PROPOSITION OF LAW NO. XIII
Ohio's death penalty law is unconstitutional. The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and §§ 2, 9, 10 and 16, Article I of the Ohio Constitution establish the requirements for a valid death penalty scheme. Ohio Rev. Code Ann. §§ 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 AND 2929.05, (Anderson 1996) do not meet the prescribed constitutional requirements and are unconstitutional on their face and as applied to Raymond Twyford.

(J.A. Vol. XIII, p. 27-179).   The State of Ohio filed a merit brief on April 19, 1999, (J.A. Vol. XIII, at 385), and on May 10, 1999, Petitioner filed a reply.   (J.A. Vol. XIII, at 461.)   On March 6, 2002, the Ohio Supreme Court rejected Petitioner's propositions of law and affirmed his convictions and sentence.   *See State v. Twyford*, 94 Ohio St. 3d 340 (2002); (J.A. Vol. XIII, at 479.)   The United States Supreme Court denied Petitioner's Petition for a Writ of Certiorari.

**D.   State Postconviction Proceedings Pursuant to Ohio Rev. Code § 2953.21**

On September 20, 1996, Petitioner filed a petition for postconviction relief pursuant to Ohio Revised Code § 2953.21, and set forth twelve claims for relief:

FIRST CLAIM FOR RELIEF
Petitioner Twyford's convictions and sentences are void and/or voidable because he was denied the effective assistance of counsel.   Petitioner Twyford's trial counsel failed to subpoena the co-defendant, Daniel Eikelberry, to testify on behalf of Twyford, although he was willing and able to do so.

SECOND CLAIM FOR RELIEF
Petitioner Twyford's convictions and sentences are void and/or voidable because he was deprived of his right to effective representation. Daniel Eikelberry was not subpoenaed by Petitioner's trial counsel to testify on behalf of Petitioner Twyford.

16

THIRD CLAIM FOR RELIEF
Petitioner Twyford's convictions and sentences are void and/or voidable because his trial attorneys did not effectively represent him. Petitioner Twyford's trial attorneys failed to contest Daniel Eikelberry through arrangement with Eikelberry's attorneys, nor did they subpoena him to testify.

FOURTH CLAIM FOR RELIEF
Petitioner Twyford's convictions and sentences are void and/or voidable because his trial attorneys were ineffective. Petitioner's trial attorneys failed to question or subpoena Daniel Eikelberry to introduce testimony in regards to issues affecting Petitioner's physical and mental health at the time of capital crime charged against him.

FIFTH CLAIM FOR RELIEF
Petitioner Twyford's convictions and sentences are void and/or voidable because relevant and probative evidence was not admitted into evidence on his behalf. Petitioner should have been evaluated by a pharmacologist and that evidence should have been admitted on his behalf.

SIXTH CLAIM FOR RELIEF
Petitioner Twyford's convictions and sentences are void and/or voidable because his trial attorneys did not employ a neuropharmacologist to evaluate Petitioner prior to trial, thus depriving him of effective assistance of counsel.

SEVENTH CLAIM FOR RELIEF
Petitioner's convictions and sentences are void and/or voidable because Dr. Donald A. Gordon (Petitioner's mental health expert for the sentencing phase) provided an inadequate evaluation of [sic] Petitioner.

EIGHTH CLAIM FOR RELIEF
Petitioner Twyford's convictions and/or sentences are void or voidable because death by electrocution constitutes a blatant disregard for the value of human life, entails unnecessary and wanton infliction of pain and diminishes the dignity of man.

NINTH CLAIM FOR RELIEF
The Ohio courts have not performed any meaningful proportionality review, but instead simply have failed to follow the spirit and intent of the statutory requirement.

TENTH CLAIM FOR RELIEF
Petitioner's convictions and sentences are void and/or voidable because he was denied the effective assistance of counsel in the jury selection phase of his trial. This was caused both by counsel's failure to be effective advocates and by the State's rendering Petitioner's counsel ineffective.

ELEVENTH CLAIM FOR RELIEF
Petitioner Twyford's convictions and sentences are void and/or voidable because he was denied the effective assistance of counsel in the Mitigation phase of his trial.

Petitioner Twyford was denied his right to the assistance of a Mitigation Specialist in preparing and presenting evidence and testimony at the Mitigation Phase of the proceedings.

TWELFTH CLAIM FOR RELIEF
Petitioner Twyford's convictions and sentences are void and/or voidable because the cumulative effects of the errors and omissions as presented in this petition in paragraphs one (1) through one hundred thirty (130), have been prejudicial to Petitioner and have denied Petitioner his rights as secured by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, 16, and Article I of the Ohio Constitution.

(Petition for Post-Conviction Relief, J.A. Vol. V, at 23-73.) Subsequently, on October 7, 1996, Petitioner filed an amended postconviction petition in which he added a new claim for relief as his twelfth claim, and renumbered claim twelve as claim thirteen:

TWELFTH CLAIM FOR RELIEF
Petitioner Twyford's convictions and sentences are void and/or voidable because a conflict in his representation existed that precluded him from having the effective assistance of counsel.

THIRTEENTH CLAIM FOR RELIEF
Petitioner Twyford's convictions and sentences are void and/or voidable because the cumulative effects of the errors and omissions as presented in this petition in paragraphs one (1) through one hundred thirty-nine (139), have been prejudicial to Petitioner and have denied Petitioner his rights as secured by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, 16, and Article I of the Ohio Constitution.

(J.A. Vol. VI, at 123-28.) On December 13, 1996, the State of Ohio filed a memorandum in opposition to the petition. (J.A. Vol. VI, at 130-135.) On November 16, 1998, the trial court issued findings of fact and conclusions of law denying Petitioner's claims and dismissing his postconviction action. (J.A. Vol. VI, at 276-281.)

On December 15, 1998, Petitioner filed a Notice of Appeal to the intermediate court of appeals as to the trial court's order denying his postconviction petition. (J.A. Vol. VII, at 12.) Petitioner filed a merit brief on July 26, 1999, setting forth three assignments of error:

> ASSIGNMENT OF ERROR NO. I:   Ohio's postconviction system does not comply with the requirements of due process as guaranteed by the fifth, sixth, eighth and fourteenth amendments to the United States Constitution.
>
> ASSIGNMENT OF ERROR NO. II:   The trial court erred when it denied appellant's requests for discovery in violation of Appellant's rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments of the United States Constitution and Article I, Sections 1, 2, 9, 10, 16 and 20 of the Ohio Constitution.
>
> ASSIGNMENT OF ERROR NO. III:   The trial court erred in granting summary judgment against Appellant Twyford and dismissing his postconviction action in violation of Appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(J.A. Vol. VII, at 100.)   The State filed its merit brief on February 4, 2000, (J.A. Vol. VII, at 238), and on March 19, 2001, the court of appeals issued a decision affirming the trial court's judgment denying Petitioner postconviction relief.   (J.A. Vol. VII, at 301-33).

On April 24, 2001, Petitioner filed a notice of appeal to the Ohio Supreme Court and a memorandum in support of jurisdiction raising the following propositions of law:

> PROPOSITION OF LAW NO. I:   Ohio's postconviction system does not comply with the requirements of due process as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.
>
> PROPOSITION OF LAW NO. II:   The trial court erred when it denied Appellant's requests for discovery in violation of Appellant's rights under the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 1, 2, 9, 10, 16 and 20 of the Ohio Constitution.
>
> PROPOSITION OF LAW III:   The trial court erred in granting summary judgment against Appellant Twyford and dismissing his postconviction action in violation of Appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(J.A. Vol. VIII, at 2-49.)   The State filed a memorandum in opposition to jurisdiction on May 23, 2001, (J.A. Vol. VIII, at 90-117), and on May 1, 2002, the Ohio Supreme Court issued an Entry summarily declining jurisdiction.   (J.A. Vol. VIII, at 144.)

### III. Federal Habeas Proceedings

Petitioner initiated the instant proceedings on January 13, 2003, by filing a notice of intent to file a federal habeas corpus petition, Doc. # 1, an application to proceed *in forma pauperis*, Doc. # 3, and a motion for the appointment of counsel, Doc. # 6. On October 2, 2003, the Court appointed Attorneys Michael Benza and Paul Mancino to serve as Petitioner's Counsel. (ECF No. 12.) Attorney Benza has since been replaced by Attorney Alan Rossman of the Federal Public Defender, Northern District of Ohio, Capital Habeas Unit. (ECF No. 70.)

On October 6, 2003, Petitioner filed a petition for writ of habeas corpus, raising the following twenty-two grounds for relief:

**Claim for Relief No. 1**: Ineffective Assistance of Counsel

    A.   Eliciting testimony alleging sexual abuse of Christina and Terri Sonny.
    B.   Failed to effectively present a defense or defend Mr. Twyford.
    C.   Failed to challenge Mr. Twyford's competency to stand trial.
    D.   Improper opening statements.
    E.   Ineffective voir dire.
     1.  Pretrial Publicity
     2.  Death penalty qualification
    F.   Failed to challenge the initial seizure and continued detention of Mr. Twyford.
    G.   Failed to challenge improper jury instructions.
    H.   Failed to challenge presence of alternate jurors in jury room during deliberations.
    I.   Failed to challenge substitution of alternate juror onto the jury between trial and mitigation phases.
    J.   Failure to challenge constitutional validity of seizure of Mr. Twyford.
    K.   Failed to object to prosecutorial misconduct.
    L.   Failed to investigate exculpatory test results.
    M.   Failed to prevent or object to errors by the trial court.
    N.   Cumulative impact.

**Claim for Relief No. 2**: Ineffective assistance of counsel on his direct appeals. Counsels' performance was unreasonable, deficient, and failed to meet reasonable standard of care in capital cases. Appellate counsels' performance prejudiced Mr.

Twyford.

**Claim for Relief No. 3**:  Prosecutorial misconduct deprived Mr. Twyford of his rights to a fair trial before a fair and impartial tribunal, and to a fair and impartial sentencing determination.

**Claim for Relief No. 4**:  The trial court erred in failing to suppress Mr. Twyford's involuntary and coerced statement.

**Claim for Relief No. 5**:  The initial seizure and detention of Mr. Twyford was unconstitutional and the fruits of that search, including the statements and physical evidence, must be suppressed.

**Claim for Relief No. 6**:  Mr. Twyford was Incompetent to be tried.  Counsel failed to re-refer the defendant and/or request a second competency hearing based upon the defendant's inability to assist with his own defense.

**Claim for Relief No. 7**:  Denial of Proper Voir Dire

**Claim for Relief No. 8**:  The failure to provide a change of venue due to pretrial publicity deprived Mr. Twyford his right to a fair trial and sentencing proceeding.

**Claim for Relief No. 9**:  The trial court denied Mr. Twyford a fair and impartial trial and sentencing proceeding.

**Claim for Relief No. 10**:  Discriminatory use of peremptory challenges.

**Claim for Relief No. 11**:  Erroneous Jury Instructions.

**Claim for Relief No. 12**:  The use of a prior conviction deprived Mr. Twyford of his rights to a fair trial before a fair and impartial tribunal, and a fair and impartial sentencing determination.

**Claim for Relief No. 13**:  The evidence of robbery was constitutionally insufficient to warrant a conviction.

**Claim for Relief No. 14**:  Erroneous introduction into evidence of gruesome and cumulative photographs and physical evidence.

**Claim for Relief No. 15**:  The jury that sentenced Mr. Twyford was not the same jury that convicted him and this deprived Mr. Twyford of his rights to a fair and impartial and competent jury.

**Claim for Relief No. 16**:  Ineffective Assistance of Counsel at Mitigation Phase.

      A. Failed to properly prepare, investigate, and present a mitigation defense.
          1. Failure to call Daniel Eikelberry.
          2. Failure to correct their error from trial phase in eliciting testimony of uncharged, unproven, and unsupported allegations of misconduct.
          3. Failed to hire experts for mitigation.
      B. Cumulative Impact.

**Claim for Relief No. 17**:   Ineffective Assistance of Expert.

**Claim for Relief No. 18**:   The trial court improperly denied Mr. Twyford an opportunity to present relevant mitigation evidence as to his ability to adjust to life in prison.

**Claim for Relief No. 19**:   Ohio's post-conviction process is an inadequate corrective remedy rendering the entire death penalty scheme arbitrary and capricious.

**Claim for Relief No. 20**:   Denial of a fair proportionality review as mandated by statute.

**Claim for Relief No. 21**:   Unconstitutionality of the death penalty statute.

**Claim for Relief No. 22**:   The cumulative impact of the errors addressed in this Petition render Mr. Twyford's conviction and sentence unreliable and unconstitutional.

(Petition, ECF No. 13.)   Subsequently, Petitioner filed several motions for funds to employ experts and/or investigators, as well as an estimated proposed budget, all of which were filed *ex parte* and under seal and approved by the Court.   (ECF Nos. 30, 57.)

On August 2, 2004, Petitioner filed a motion to stay the proceedings and hold the case in abeyance in order to exhaust state court remedies, *i.e.*, a second Rule 26(B) application to reopen his direct appeal to assert additional claims of ineffective assistance of appellate counsel.   (ECF No. 33.)   This Court granted Petitioner's motion to stay and directed Petitioner to file monthly status reports regarding the state court proceedings.   (ECF No. 38.)   In December 2004, the Seventh District Court of Appeals denied Petitioner's second application to reopen his appeal,

explaining that Petitioner was not entitled to file a second application for reopening. (J.A. Vol. XV, at 329.) On September 7, 2005, the Ohio Supreme Court affirmed the decision of the court of appeals, finding "there is no right to file successive applications for reopening under App.R. 26(B)," and holding that "[o]nce ineffective assistance of counsel has been raised and adjudicated, *res judicata* bars its relitigation." *State v. Twyford*, 106 Ohio St. 3d 176, 176-77 (2005). Additionally, the Court determined that Petitioner's application was untimely, as Rule 26(B)(1) directs that an application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment, and Petitioner failed to show good cause why he "waited more than five years before filing his application." *Id*. at 177.

### IV. Procedural Default

This matter is before the Court upon Respondent's motion to dismiss certain claims on the basis of procedural default. (ECF No. 78.) Respondent asserts that not every claim Petitioner has raised in his habeas corpus petition was presented to the Ohio courts either during the direct appeals or on collateral review. As a general matter, a defendant who is convicted in Ohio of a criminal offense has available to him more than one method of challenging that conviction. Claims appearing on the face of the trial record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175 (1967). Issues that must be raised in a postconviction action pursuant to R.C. § 2953.21 include claims that do not appear on the face of the record; issues that can be raised in postconviction include claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial. *State v. Cole*, 2 Ohio St. 3d 112 (1982). In 1992, a third procedure of review emerged. Claims of ineffective assistance of appellate counsel must be presented to the appellate court in a motion for delayed reconsideration or application for

23

reopening pursuant to *State v. Murnahan*, 63 Ohio St. 3d 60 (1992) and Ohio R. App. P. 26(B). In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve his constitutional claims for habeas review, must present those claims to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal, or stay and abeyance, for failure to exhaust state remedies. *Id.*; *Rhines v. Weber*, 544 U.S. 269 (2005); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a district court must undertake a four-part analysis when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to

foreclose review of a federal constitutional claim.  *Id.*  Finally, if the Court has determined that a

petitioner did not comply with a state procedural rule, and that the rule was an adequate and

independent state ground, then the petitioner must demonstrate that there was cause for him not to

follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Id.*  This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at

the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Respondent alleges that many of Petitioner's grounds for relief, in their entirety or in part,

are subject to dismissal as procedurally defaulted.  (ECF No. 78.)  The Court will address each of

Respondent's allegations, in the order raised by Respondent, as well as Petitioner's response (ECF

No. 79), Respondent's reply (ECF No. 80), and Petitioner's notice of supplemental authority (ECF

No. 85).

## A.  Failure to object at trial

Respondent argues that Petitioner's entire twelfth ground for relief and portions of his

third, eleventh and fourteenth grounds for relief are procedurally defaulted because Petitioner

failed to object at trial and therefore waived the issues.  Respondent argues that Ohio's

contemporaneous objection rule "long has been recognized as a basis for a procedural bar in

federal habeas," and "[t]he essence of the rule is that errors should be noted at a time when the

error could have been avoided or corrected by the trial court."  (ECF No. 78, at PAGEID # 530.)

### 1.  **Twelfth ground for relief:  The use of a prior conviction deprived Mr. Twyford of his rights to a fair trial before a fair and impartial tribunal, and to a fair and impartial sentencing determination.**

In his twelfth ground for relief, Petitioner argues that he was denied a fair trial because the

trial judge read the full Indictment to the jury during jury selection, and the Indictment contained a

reference to Petitioner's prior conviction for burglary.  That prior burglary conviction served as

the basis for a sentencing enhancement specification to the kidnapping and aggravated robbery charges contained in Counts Three and Four, and also served as the crux of the weapon under disability charge contained in Count Five of the Indictment. Specifically, in his twelfth ground for relief, Petitioner alleges:

> The court in the jury selection in this case proceeded to read the indictment to the jury. The court read the third count of the indictment which charged petitioner with the offense of kidnapping. The jury was informed concerning a specification that petitioner had been previously convicted of an aggravated felony, to wit: burglary in Lake County. The court then read the fourth count which was aggravated robbery which also alleged the prior conviction of an aggravated felony of burglary in Lake County. The Ohio Supreme Court, in considering this issue, did not reference the fact that the jury was informed concerning defendant's convictions which were only sentencing enhancements to applicable Ohio law. The statute in effect as the time, Ohio Revised Code §2941.142, specifically stated that evidence of prior convictions which was used as a sentencing enhancement shall, at the request of a defendant be submitted to the court. However, the Ohio Supreme Court made no reference of the court announcing to the jury panel that petitioner had these prior convictions.

(Petition, ECF No. 13-2, at PAGEID # 89.)

In the motion to dismiss, Respondent states that Petitioner raised this claim for relief as his eighth proposition of law on direct appeal to the Ohio Supreme Court. (ECF No. 78, at PAGEID # 531.) According to Respondent, the Ohio Supreme rejected the claim on the basis that Petitioner failed to object at trial, and only reviewed the claim for plain error, finding that no plain error occurred where Petitioner's prior conviction was an element of Count Five of the Indictment, which alleged that Petitioner possessed a firearm while under disability due to his prior conviction for a felony offense of violence. (*Id.*) Respondent argues that Ohio's contemporaneous objection rule has long been recognized as a basis for a procedural bar to a claim in federal court, and the Ohio Supreme Court's "alternate plain error analysis 'does not save a petitioner from procedural default. . . . Plain error analysis is more properly viewed as a court's right to overlook

procedural defects to prevent manifest injustice, but is not equivalent to a review on the merits.'" (Reply, ECF No. 80, at PAGEID # 597-98) (citing *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006)).

In response, Petitioner argues that the Ohio Supreme Court did not specifically address the claim or issue alleged in his twelfth ground for relief.   According to Petitioner, in detailing his twelfth ground for relief in his habeas petition, he asserts that it was during jury selection that the trial court erred by reading the entire Indictment, including the reference to the prior conviction for burglary that served as a sentencing enhancement for the kidnapping and aggravated robbery charges.   Petitioner argues that in considering his eighth proposition of law on direct appeal, the Ohio Supreme Court "did not reference the fact that the jury was informed concerning defendant's convictions which were only sentencing enhancements to applicable Ohio law."   (ECF No. 79, at PAGEID # 542.)   Instead, Petitioner argues, the court's focus in denying the claim was anchored in trial counsel's failure to object to the use of the prior conviction in connection with Count Five, the weapon under disability charge.   (*Id.*, at PAGEID # 543.)

Petitioner contends that because the Ohio Supreme Court did not specifically address the claim at issue in his twelfth ground for relief, the AEDPA does not apply.   Petitioner argues:

> While the Ohio Supreme Court's arguably erroneous interpretation may have allowed for the disposal of the issue by reference to counsel's failure to object to the prior conviction being presented relative to the 'weapon while under a disability' count in the indictment, (to which Section 2941.142 admittedly does not apply), it does not render the analysis a decision that addresses the claim presented in Twyford's Habeas Petition.
> Because the Ohio Supreme Court did not adjudicate the claim in the broader context in which it was litigated and alleged in the Petition, the State Court has not addressed the claim presented on the merits.   The AEDPA does not apply given that the AEDPA's standard of review applies only to habeas claims that were adjudicated on the merits in State court proceedings.

(ECF No. 79, at PAGEID # 544) (internal quotation omitted).

At the outset, the Court notes that there was no "arguably erroneous interpretation" of Petitioner's eighth proposition of law by the Ohio Supreme Court. Unmistakably, the Ohio Supreme Court dealt with the claim that was presented to it. In his eighth proposition of law, Petitioner argued that the trial court erred by not granting a defense request to rule from the bench with respect to the existence of the prior felony conviction as it related to the weapon under disability charge set forth in Count Five of the Indictment. The first two paragraphs of Petitioner's eighth proposition of law read as follows:

> Count five of the indictment charged Raymond Twyford with carrying a weapon while under disability in violation of Ohio Rev. Code Ann. Sec. 2923.14 (Baldwin 1995). On March 19, 1993, defense counsel filed a Request that the Trial Judge Determine the Existence of Prior Felony Convictions at a Sentencing Hearing, instead of the jury as part of the guilt phase of the trial. The motion had two purposes. First, defense counsel asked the trial court to determine the prior felony specifications at a sentencing hearing pursuant to Ohio Rev. Code Ann. Sec. 2941.142 (Baldwin 1995). Second, that the jury should not consider evidence of defendant's prior convictions as this would improperly influence the jury.
> After voir dire, defense counsel brought to the court's attention that this request had not been ruled upon; but Judge Olivito still refused to issue a ruling. Judge Olivito proceeded to instruct the jurors that they had to find that Twyford had previously been convicted of a felony crime of violence in order to find him guilty of Court five of the indictment. Judge Olivito did not instruct the jury to limit Twyford's prior burglary conviction to Count five only; and, thus to prohibit the jury from using the burglary conviction as evidence of Twyford's propensity to commit crimes. Furthermore, the jury was instructed to evaluate Count five (which included the burglary conviction) before any of the two aggravated murder counts. As to Count five of the Indictment, the jury found Twyford guilty.

(J.A. Vol. XIII, 127-28.) Although the remainder of the proposition of law goes on to argue the concerns associated with character evidence generally, that argument merely expanded upon the allegation that it was error for the trial court to permit the jury to determine the existence of the prior conviction as an element of the offense of weapon under disability. At no point in his eighth proposition of law, (J.A. Vol. XII, at 128-131), did Petitioner allege the trial court erred during voir dire by reading the Indictment, which included the sentencing enhancement specifications to the

kidnapping and aggravated robbery counts. Accordingly, this Court concludes that Petitioner's twelfth ground for relief is procedurally defaulted because it was never presented to the State courts.

However, to the extent the parties both appear to agree that Petitioner's twelfth ground for relief was contained within his eighth proposition of law (a contention this Court does not share based on its own review of the state court record), the Court agrees that the Ohio Supreme Court expressly rejected any claim concerning the use of the prior conviction on the basis of the contemporaneous objection rule. With respect to the prior burglary conviction, the court noted "contrary to appellant's assertions, defense counsel never objected to this evidence, requested a limiting instruction, or objected to the lack of a limiting instruction," and "[h]aving failed to object to the evidence or instructions, appellant waived all but plain error." *State v. Twyford*, 94 Ohio St. 3d 340, 360 (2002). The Court determined that no plain error occurred where the prior conviction was an essential element of the crime charged. *Id.* Specifically, the Ohio Supreme Court held:

> Before trial, counsel did request that the court, pursuant to Ohio Revised Code Section 2941.142 to determine the existence of prior felony convictions at the sentencing hearing and that the jury not be permitted to consider the evidence of prior convictions.
>
> But R.C. 2941.142, since repealed, applied only to situations where a penalty for a felony offense under R.C. 2929.11 was enhanced because of the existence of a prior felony conviction. The court in fact followed R.C. 2941.142 in this case. At appellant's request, the trial court did not submit those penalty enhancement specifications to the jury, and the jury made no findings regarding them. Instead, the trial court, as requested, referred to those penalty enhancement specifications only at sentencing.
>
> Former R.C. 2941.142 does not apply to Count Five because the prior conviction was a direct element of the principal offense charged. The state was entitled to prove that element of Count Five as it did.

*State v. Twyford*, 94 Ohio St. 3d 340, 359-60 (2002).

The Court finds a clear and express intent on behalf of the Ohio Supreme Court to treat Petitioner's claim regarding the prior conviction as waived based on trial counsel's failure to object at trial. Ohio's contemporaneous objection rule, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), requires the parties to preserve errors for appeal by calling them to the attention of the trial court at a time when the error could be avoided or corrected. It has been held time and again that the rule is an adequate and independent state ground of decision sufficient to justify the procedural default of a federal constitutional claim. *See*, *e.g.*, *Hand v. Houk*, No. 14-3148, 2017 WL 3947732, at *18 (6th Cir. Sept. 8, 2017) ("We have previously held that an Ohio court's enforcement of the contemporaneous-objection rule is an independent and adequate state ground of decision sufficient to bar habeas relief.") (internal citation omitted); *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Failure to adhere to the firmly-established Ohio contemporaneous objection rule is an independent and adequate state ground of decision."), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011) ("Ohio's contemporaneous objection rule is a firmly established procedural rule that is an adequate and independent state ground to foreclose federal relief."); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010) (same). Moreover, under Ohio law, the mere filing of a motion requesting that the trial court and not the jury determine the existence of the prior conviction did not relieve Petitioner of the duty to actually object to any reference or evidence of the prior conviction. *See State v. Grubb*, 503 N.E.2d 142, 146 (Ohio 1986) ("An order granting or denying a motion *in limine* is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated. An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial."). *See also Jones v. Warden, Lebanon Corr. Inst.*, No. 2:14cv01218, 2015 WL 7829145, at

*3 (S.D. Ohio Dec. 4, 2015) ("Under Ohio's contemporaneous objection rule, a criminal defendant must object at trial in order to preserve for appeal a trial court's ruling on a motion *in limine*.").

Here, the Ohio Supreme Court specifically invoked the contemporaneous objection rule, noting both counsel's failure to object at trial as well as counsel's failure to even request a limiting instruction. *Twyford*, 94 Ohio St. 3d at 360. The fact that the Court proceeded to conduct a plain error analysis regarding the introduction of evidence of the prior conviction does not revive the claim but instead constituted actual enforcement of the contemporaneous objection rule. *See, e.g.*, *Everett v. Turner*, No. 1:16-cv-654, 2017 WL 2861181, at *3 (S.D. Ohio July 5, 2017) ("An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default."), *citing Wogenstahl*, 668 F.3d at 337 ("Although the court did evaluate the claim under plain error, the Ohio Supreme Court's plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue.") (internal citation omitted); *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("Plain error analysis . . . is not equivalent to a review of the merits."). Accordingly, absent a showing of cause and prejudice or manifest injustice, this Court finds the Ohio Supreme Court's enforcement of the contemporaneous objection rule is a valid reason to preclude habeas review of Petitioner's twelfth ground for relief.

Petitioner argues that cause exists to excuse the default of his twelfth ground for relief based on the ineffective assistance of trial counsel for failing to properly preserve the claim for review in state court. (ECF No. 79, at PAFEID # 547.) But before a claim of ineffective assistance of trial counsel can be considered as cause to excuse a procedural default, that ineffective assistance claim must itself have been fairly presented to the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (holding that an ineffective assistance of counsel claim offered as cause for the default of a substantive federal claim must first be properly

presented to the state courts).   Petitioner argues that a review of "the broader record" on appeal indicates that he properly raised a corresponding claim of ineffective assistance of trial counsel for failing to object at trial.   Specifically, Petitioner notes that in his merit brief to the Ohio Supreme Court, he argued as part of his eleventh proposition of law, that "trial counsel failed to object and thus preserve numerous errors at trial, which have been red-flagged through individual propositions of law contained in this brief."   (ECF No. 79, at PAGEID # 547.)

In his eleventh proposition of law on direct appeal, Petitioner set forth two specific allegations of ineffective assistance of trial counsel.   First, Petitioner argued that his trial counsel were ineffective during the cross-examination of the Sheriff, because counsel elicited testimony regarding Petitioner's alleged sexual misconduct with his girlfriend's minor children.   (J.A. Vol. XIII, at 145.)   Secondly, Petitioner argued that his counsel were ineffective during voir dire in connection with the death qualification of the jury.   (*Id*. at 151.)   The fact that Petitioner tossed in a generic, all-encompassing one-liner that trial counsel failed *generally* to object to numerous errors at trial is not sufficient to state a claim of ineffective assistance for not specifically objecting to references and evidence concerning his prior felony conviction for burglary.   That is because a petitioner does not fairly present the substance of a claim unless the state courts are afforded sufficient notice and a fair opportunity "to apply controlling legal principles to the facts underlying the constitutional claim."   *Anderson v. Harless*, 459 U.S. 4, 6 (1982).   A petitioner must present to the state courts both the legal theory and the factual basis of any federal claim that he seeks to present.   *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987).   Accordingly, the Court finds that Petitioner never presented this specific ineffective assistance of trial counsel claim to the state courts, and *Edwards v. Carpenter* thus precludes this Court from considering it as

cause-and-prejudice to excuse any waiver of Petitioner's twelfth ground for relief. The Court **GRANTS** Respondent's motion to dismiss Petitioner's twelfth ground for relief as procedurally defaulted and waived.

### 2. Third ground for relief: Prosecutorial misconduct deprived Mr. Twyford of his rights to a fair trial before a fair and impartial tribunal, and to a fair and impartial sentencing determination.

Respondent argues that Petitioner procedurally defaulted six sub-claims of his third ground for relief, which set forth several instances of alleged prosecutorial misconduct, based on his failure to object to the alleged misconduct at trial. Specifically, Respondent argues that Petitioner defaulted his allegations that (1) the prosecutor stated Petitioner was not a credible witness because he did not testify (¶ 277), (2) the prosecutor introduced inadmissible evidence against Petitioner and commented on this inadmissible evidence (¶ 278), (3) the prosecutor argued a non-statutory aggravating factor (¶ 280), (4) the prosecutor demeaned mitigating evidence which outweighed any aggravating factors (¶ 281), (5) the prosecutor attempted to cumulate the aggravating circumstances when there were none and implied there were more aggravating circumstances than there were (¶ 282), and (6) the prosecutor argued that any mitigation was not an excuse for murder (¶ 283). (ECF No. 78, at PAGEID # 531.) According to Respondent, the Ohio Supreme Court denied the claims as waived because there was no contemporaneous objection at trial, and only reviewed the claims to determine whether plain error occurred. (*Id*. at PAGEID # 532.)

In response, Petitioner does not squarely address Respondent's argument that the sub-claims are defaulted because of his failure to comply with the contemporaneous objection rule, and instead argues that he fairly presented the sub-claims at issue because he raised them in his direct appeal to the Ohio Supreme Court. (ECF No. 79, at PAGEID # 549.) Additionally,

33

Petitioner asserts that he "also made repeated efforts to raise his counsel's failure to object to the misconduct before the state courts" and "[t]he courts failed to address his claim." (*Id.*) Specifically, Petitioner contends that in his merit brief addressing his prosecutorial misconduct claims, he argued that "[w]here trial counsel failed to object to these errors, their action fell below the reasonable professional standards in a capital case, resulting in prejudice to the defendant." (*Id.*) (citing J.A. Vol. XIII, at 105.) Petitioner appears to conclude that because he offered the Ohio Supreme Court an excuse for his failure to object at trial to the alleged misconduct of the prosecutor, the Ohio Supreme Court had an obligation to consider the merits of his "cause" argument before enforcing the contemporaneous objection rule. Applying this perspective, Petitioner maintains that the AEDPA does not apply because the claims were not adjudicated on the merits. (ECF No. 79, at PAGEID # 550.) This Court does not agree.

At issue in this Opinion and Order are paragraphs 277, 278 and 280 through 283 of Petitioner's third ground for relief, all of which set forth allegations of prosecutorial misconduct during Petitioner's trial. A review of the Ohio Supreme Court's decision reveals that the Court chose to address the allegations set forth in paragraphs 277-78, and 280-83, but only as an alternative, plain error review, after finding that Petitioner defaulted the claims by failing to lodge objections at trial.

In paragraph 277, Petitioner argues the prosecutor impermissibly commented that Petitioner "was not a credible witness because he did not testify." (Petition, ECF No. 13-1, at PAGEID # 54.) This commentary appears to have occurred during the prosecution's closing argument during the guilt phase and was not objected to by trial counsel. Petitioner challenged the prosecutor's commentary on direct appeal to the Ohio Supreme Court as part of his sixth proposition of law. The Ohio Supreme Court began its discussion of this sub-claim by finding it

34

was waived due to trial counsel's failure to object. Specifically, the Court held "[w]e note, initially, that appellant failed to object at trial regarding this particular conduct of the prosecutor. Thus, appellant has waived all but plain error." *State v. Twyford*, 94 Ohio St. 3d 340, 355 (2002). The Court then proceeded to acknowledge that "[a]rguably, the comments by the prosecutor in this instance can be read as an impermissible inference of guilt regarding the defendant's decision not to testify, and we in no way condone such tactics," but reiterated that "isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Id.* at 356. The Court concluded that the comments neither materially prejudiced Petitioner nor denied him a fair trial.

In paragraph 278, Petitioner argues "[t]he prosecutor introduced inadmissible evidence against petitioner and commented on this inadmissible evidence." (Petition, ECF No. 13-1, at PAGEID # 54.) It appears this sub-claim references the prosecutor's mentioning of certain objects that were not introduced into evidence or definitively linked to the crime, such as knives, a saw and a hatchet. (Petition, ECF No. 13, at PAGEID # 14.) In sub-claims 280-283, Petitioner argues the prosecutor committed misconduct by arguing non-statutory aggravating circumstances, demeaning the mitigating evidence, implying that there were more aggravating circumstances than there were, and arguing that the mitigating evidence was not an excuse for murder. (ECF No. 13-1, at PAGEID # 54-55.) After listing these various allegations of misconduct, the Ohio Supreme Court held as follows:

> We have reviewed these arguments in their entirety, and none is supported by a fair and impartial review of the record. Trial counsel failed to object to each and every one of these purported acts of prosecutorial misconduct and thus have waived all but plain error. We find that neither alone nor in the aggregate did these asserted errors have an arguable effect on the outcome of the trial.

*State v. Twyford*, 94 Ohio St. 3d 340, 357 (2002) (internal quotation omitted).

As stated in the previous section of this Opinion and Order, Ohio's contemporaneous objection rule requires the parties to preserve errors for appeal by calling them to the attention of the trial court at a time when the error could be avoided or corrected, and the Sixth Circuit has unequivocally held the rule is an adequate and independent state ground of decision sufficient to justify the procedural default of a federal constitutional claim. *See*, *e.g.*, *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010). Here, the Ohio Supreme Court clearly and expressly invoked the rule, noting Petitioner's failure to object and preserve the alleged misconduct for review. The fact that the court proceeded to conduct a plain error analysis of Petitioner's claims of prosecutorial misconduct did not negate the invocation of the procedural bar and instead constituted actual enforcement of Ohio's contemporaneous objection rule. *See, e.g.*, *Everett v. Turner*, No. 1:16-cv-654, 2017 WL 2861181, at *3 (S.D. Ohio July 5, 2017) ("An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default."), *citing Wogenstahl*, 668 F.3d at 337 ("Although the court did evaluate the claim under plain error, the Ohio Supreme Court's plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue.") (internal citation omitted); *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("Plain error analysis . . . is not equivalent to a review of the merits."). Absent a showing of cause and prejudice or manifest injustice, this Court finds the Ohio Supreme Court's enforcement of the contemporaneous objection rule is a valid reason to preclude habeas review of sub-claims 277-78 and 280-83 of Petitioner's third ground for relief.

Although Petitioner argues that he offered the Ohio Supreme Court an explanation for his failure to object at trial, and faults the Ohio Supreme Court for not addressing whether his trial

counsel were ineffective for failing to object, Petitioner does not actually offer this Court any cause and prejudice arguments with respect to the sub-claims at issue in his third ground for relief. Nevertheless, the Court has considered whether Petitioner has established cause to excuse his failure to comply with the contemporaneous objection rule, and finds that he has not. Petitioner references the section of his direct appeal merit brief addressing his claims of prosecutorial misconduct, wherein he stated "[w]here trial counsel failed to object to these errors, their action fell below the reasonable professional standards in a capital case, resulting in prejudice to the defendant." (J.A. Vol. XIII, at 105.) This blanket, conclusory statement contained within a separate claim of prosecutorial misconduct is insufficient to present a freestanding claim of trial counsel ineffectiveness to the state courts, and therefore cannot serve as cause and prejudice to excuse a procedural default. *See Wogenstahl*, 668 F.3d at 335 (finding petitioner's ineffective assistance of counsel allegation insufficient to excuse the default of a prosecutorial misconduct claim because "merely conclusory allegations of ineffective assistance like those Wogenstahl makes here, are insufficient to state a constitutional claim."), citing *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *Meridy v. Ludwick*, No. 2:08cv15249, 2017 WL 3263451, at *8 (E.D. Mich. July 31, 2017) ("Petitioner, however, fails to provide any specific information as to what counsel could have or should have done, but failed to do. This conclusory allegation is insufficient to sustain an ineffective assistance of counsel claim.") (citing *Wogenstahl*, 668 F.3d at 335-36).

Absent a properly presented free-standing claim of attorney ineffectiveness, the ineffective assistance of trial counsel cannot serve as cause and prejudice to excuse the default of the sub-claims at issue in his third ground for relief. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000). Accordingly, the Court **GRANTS** Respondent's motion to dismiss the sub-claims

contained within paragraphs 277, 278, 280, 281, 282, and 283 of Petitioner's third ground for relief.

### 3.    Eleventh ground for relief:    Erroneous jury instructions

Respondent argues that Petitioner procedurally defaulted two sub-claims of his eleventh ground for relief by failing to object at trial.    First, Respondent alleges that Petitioner defaulted the portion of his claim alleging there was an improper instruction on the principal offender or prior calculation and design element, set forth in paragraphs 446-451 of the petition.    Secondly, Respondent argues that Petitioner failed to object to the mitigation phase instructions and the alleged failure of those instructions to merge the aggravating circumstances (¶¶ 452-458).    (ECF No. 78, at PAGEID # 532.)    Respondent contends that Petitioner presented the allegations at issue to the Ohio Supreme Court as part of his Second Proposition of Law and the Ohio Supreme Court rejected the claims on the basis of the contemporaneous objection rule, and only alternatively held that no plain error occurred. (*Id*.)

In response, Petitioner concedes that the Ohio Supreme Court only reviewed this portion of his jury instruction claim under the plain error doctrine.    (ECF No. 79, at PAGEID # 550.) However, Petitioner argues "the reason this procedural defense fails is that Twyford did assert on direct review to the Ohio Supreme Court that his trial counsel failed to object to the jury instructions.    The Court failed to address the merits of his claim."    (*Id*.)    Again, Petitioner appears to argue that the Ohio Supreme Court's enforcement of the procedural bar is not binding on this Court, because he attempted to excuse his failure to object by arguing that his trial counsel were ineffective, yet the Ohio Supreme Court did not address his ineffective assistance argument before deeming the claim waived.    Regarding cause and prejudice, Petitioner concedes that he never presented to the Ohio courts a freestanding claim of ineffective assistance of trial counsel for

failure to object to these instructions, and that pursuant to *Edwards v. Carpenter*, a defaulted claim of ineffective assistance of trial counsel cannot serve as cause and prejudice to excuse the default of an underlying claim. Offering cause for the default of cause, Petitioner argues the ineffective assistance of appellate counsel acts as cause to excuse the default of his ineffective assistance of trial counsel claim, so that it may excuse the default of the specific jury instruction sub-claims at issue. According to Petitioner, appellate counsel failed to "specifically (as opposed to generally) rais[e] trial counsel's failure to object to specific jury instructions." (*Id.* at PAGEID # 551.)

On direct appeal to the Ohio Supreme Court, as his second proposition of law, Petitioner set forth several claims of error regarding the instructions during the mitigation phase of his trial. In the first paragraph of the Ohio Supreme Court's discussion of the matter, the Court noted:

> In his second proposition of law, appellant contends that the trial court erroneously instructed the jury regarding the factors to consider in recommending punishment. Initially, we note that appellant did not request different penalty instructions or object to those given at trial. Appellant's failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise. The trial court's penalty instructions did not rise to the level of plain error.

*State v. Twyford*, 94 Ohio St. 3d 340, 349-50 (2002). The Ohio Supreme Court then proceeded to address the two specific instructions at issue in this default decision and held that no plain error occurred.

Here, the Court finds that the Ohio Supreme Court clearly and expressly invoked the contemporaneous objection rule and determined that Petitioner waived all but plain error review with respect to the mitigation phase instructional error sub-claims set forth in paragraphs 446-451 and 452-458 of the petition. Thus, the only question before this Court is whether Petitioner can establish cause and prejudice for his failure to preserve the sub-claims. Petitioner is asking this Court to go down a path of triple default analysis in order to determine that a defaulted claim of

ineffective assistance of appellate counsel can excuse the default of an ineffective assistance of trial counsel claim that Petitioner wishes to use to excuse the default of a freestanding claim of instructional error.   This the Court will not do.

On his first direct appeal to the Seventh District Court of Appeals, Petitioner did not set forth a claim of ineffective assistance of trial counsel for failing to object to the trial court's sentencing phase jury instructions.   (J.A. Vol. II, at 44.)   Subsequently, the court of appeals granted Petitioner's application to reopen his direct appeal, and represented by new appellate counsel, Petitioner raised an additional twenty-five assignments of error that he argued should have been raised on direct appeal.   Still, Petitioner did not assert a claim of ineffective assistance of trial counsel for failing to object to the erroneous jury instructions at issue in this default decision.   Petitioner has defaulted his ineffective assistance of trial counsel as cause argument, and it cannot be used to excuse the default of his eleventh ground for relief.

In an attempt to excuse the many defaults regarding these claims of instructional error, Petitioner argues that the ineffective assistance of his attorneys from the Ohio Public Defender's Office who represented him in his reopened appeal, as well as his consolidated direct appeal to the Ohio Supreme Court, serves as cause and prejudice.   In his Notice of Supplemental Authority in opposition to Respondent's motion to dismiss, Petitioner argues the United States Supreme Court decisions of *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), "provide authority to rescue trial counsel IAC claims defaulted while litigating a reopened direct appeal in Ohio."   (ECF No. 85, at PAGEID # 632.)   Specifically, Petitioner argues that because a reopened appeal pursuant to Rule 26(B) is considered a post-conviction remedy, "*Martinez* and *Trevino* provide authority for the proposition that, in instances where an appellant's direct appeal is reopened pursuant to Rule 26(B), trial counsel IAC claims defaulted by ineffective Rule 26(B)

post-conviction counsel's failure to present them may be rescued by the *Martinez/Trevino* cause and prejudice analysis."   (*Id.*, at PAGEID # 635.)

As an initial matter, the Sixth Circuit has treated reopened appeals under Ohio Appellate Rule 26(B) as post-conviction proceedings, for which no right to counsel is constitutionally required.   *See Lopez v. Wilson,* 426 F.3d 339, 352 (6th Cir. 2005) (holding that "a Rule 26(B) application to reopen is a collateral matter rather than part of direct appeal," and "[a]s such, there is no federal constitutional right to assistance of counsel at that stage"); *Issa v. Bagley*, 1:03-CV-280, 2015 WL 5542524, at *28 (S.D. Ohio Sept. 21, 2015) ("In *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005) (en banc), the Sixth Circuit overruled *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000), and held that an Ohio Rule 26(B) application to reopen a direct appeal to raise an ineffective assistance of appellate counsel claim, is a post-conviction proceeding and not an extension of a defendant's direct appeal.").   The Ohio Supreme Court has also determined that the Rule 26(B) procedure is part of a collateral post-conviction review.   *Morgan v. Eads,* 104 Ohio St.3d 142, 818 N.E.2d 1157 (2004).

In *Coleman v. Thompson*, 501 U.S. 722, 757 (1991), the Supreme Court established that because there was no constitutional right to counsel in state post-conviction proceedings, attorney error in those proceedings could not constitute cause to excuse procedural default in habeas corpus.   In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court carved the following narrow exception to *Coleman*:   "[w]here, under state law, claims of ineffective assistance of *trial* counsel *must* be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."   566 U.S. at 17 (emphasis added).   In *Trevino v. Thaler*, 133 S.Ct. 1911, 1918

(2013), the Supreme Court expanded *Martinez*'s narrow exception beyond states where claims of ineffective assistance of trial counsel *must* be raised in an initial-review collateral proceeding to states that *permit* but do not *require* claims of ineffective assistance of trial counsel to be raised on direct appeal.

In *McGuire v. Warden*, 738 F.3d 741 (6th Cir. 2013), the Sixth Circuit declined to find that *Trevino* expanded *Martinez* to apply to Ohio cases, explaining that "Ohio law appears to contemplate two kinds of ineffective assistance of counsel claims, those based only on evidence in the trial record and those based in part on evidence outside the record."  *McGuire*, 738 F.3d at 751.  Moreover, in *Hill v. Mitchell*, 842 F.3d 910, 937 (6th Cir. 2016), the Sixth Circuit remarked, "[w]e have yet to decide whether *Trevino* applies in Ohio, *but we have suggested it may not on multiple occasions*."  (emphasis added) (citing *Landrum v. Anderson*, 813 F.3d 330, 336 (6th Cir. 2016)).

Regardless of whether *Martinez/Trevino* applies to Ohio, two things are clear.  First, the exception only applies during *initial-review* collateral proceedings.  *See Young v. Westbrooks*, 16-5075, 2017 WL 2992222, at *10 (6th Cir. July 14, 2017) (noting that "the *Martinez-Trevino* exception does not extend to attorney error at post-conviction *appellate* proceedings because those proceedings are not the 'first occasion' at which an inmate could meaningfully raise an ineffective-assistance-of-trial-counsel claim").  Secondly, the exception only applies to excuse the default of claims of ineffective assistance of counsel at *trial*.  Recently, in *Davila v. Davis*, 137 S.Ct. 2058 (2017), the United States Supreme Court reiterated that *Martinez* will allow the ineffectiveness of post-conviction counsel to excuse only "a single claim—ineffective assistance of *trial* counsel – in a single context" and the Court declined to "extend that exception to allow federal courts to consider a different kind of defaulted claim—ineffective assistance of *appellate*

42

counsel." *Davilla*, 137 S.Ct. at 2062-63.

Accordingly, because the *Martinez/Trevino* exception is inapplicable to the claims and procedural posture to which Petitioner seeks to apply it, this Court must find, pursuant to the general rule announced in *Coleman v. Thompson*, 501 U.S. 722, 757 (1991), that Petitioner had no constitutional right to counsel in his state proceedings to reopen his direct appeal, as those proceedings constituted post-conviction proceedings by nature to which no right to counsel attaches. *McClain v. Kelly*, 631 F. App'x 422, 437 (6th Cir. Dec. 14, 2015) (noting "counsel's failures in connection with a Rule 26(B) application cannot serve as cause to excuse a procedural default because there is no right to counsel at that stage"); *Tolliver v. Sheets*, 594 F.3d 900, 929 (6th Cir. 2010) (noting that "[u]nder Ohio law, however, a Rule 26(B) proceeding is a 'separate collateral' proceeding rather than part of the original appeal," and "Tolliver therefore has no constitutional right to counsel for the proceeding—and thus certainly had no constitutional right to *effective* counsel"). With respect to Petitioner's argument that the same counsel from the Ohio Public Defender's Office represented him during his reopened direct appeal proceedings as well as his second appeal as of right to the Ohio Supreme Court, this Court notes that "the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *State v. Buell*, 70 Ohio St. 3d 1211, 1212 (1994) (death penalty case finding no right to appointed counsel exists on second appeal as of right to Ohio Supreme Court after initial appeal as of right to intermediate court of appeals).

For the reason set forth above, the Court **GRANTS** Respondent's motion to dismiss paragraphs 446-451 and 452-458 of Petitioner's eleventh ground for relief as procedurally defaulted.

### 4. Fourteenth ground for relief:   Erroneous introduction into evidence of gruesome and cumulative photographs and physical evidence

Respondent argues that Petitioner waived portions of his fourteenth ground for relief due to his failure to object at trial.   Specifically, Respondent argues that Petitioner failed to object to the State's introduction into evidence of Exhibits 9 and 24.   (ECF No. 78, at PAGEID # 532.) According to Respondent, Petitioner first challenged the introduction of Exhibits 9 and 24 on direct appeal as his seventh proposition of law, and the Ohio Supreme Court found the claim waived on the basis of the contemporaneous objection rule.

In his seventh proposition of law before the Ohio Supreme Court, Petitioner argued that he was denied a fair trial and a fair sentencing determination because the trial court erroneously admitted gruesome and cumulative photos which were designed to invoke the sympathy of the jurors and inflame the jury's emotions.   In rejecting this claim, the Ohio Supreme Court specifically identified the photographs at issue here, exhibits 9 and 24, and found that Petitioner violated the contemporaneous objection rule.   The Court noted:

> Appellant refers specifically to state's exhibits 8, 9, 14, 15, 16, 24, 27, and 28.   However, appellant made no objection at trial to exhibits 9 and 24 and hence can complain only of plain error as to those exhibits.   Exhibit 9, a photo of Frank's baseball cap, purportedly shows brain tissue, but, if so, it is not noticeable.   Exhibit 24, a nongruesome side view of the cowboy boot, does not display the hands inside. This, no plain error resulted from admitting exhibits 9 and 24.

*State v. Twyford*, 94 Ohio St. 3d 340, 358 (2002).

Petitioner concedes that his trial counsel did not object at trial during the admission of Exhibits 9 and 24 into evidence, and also agrees that the Ohio Supreme Court conducted only plain error review with respect to these exhibits.   Petitioner argues, however, that he can establish cause and prejudice to excuse the default of these sub-claims, because his trial counsel were ineffective for failing to object at trial.   Petitioner argues that he presented a general claim of ineffective

assistance based on his trial counsel's failure to object, but the Ohio Supreme Court refused to consider the merits of that argument. For the reasons set forth in the Court's discussion of Petitioner's twelfth ground for relief, in Part IV(A)(1) of this Opinion and Order, this Court does not agree.

Petitioner references his eleventh proposition of law on direct appeal wherein he set forth two specific allegations of trial counsel ineffectiveness. Specifically, Petitioner argued trial counsel were ineffective during the cross-examination of Sheriff Abdalla because counsel elicited testimony regarding Petitioner's alleged sexual misconduct with a minor, (J.A. Vol. XIII, at 145), and secondly, that counsel were ineffective during voir dire because they did not properly explore juror biases. (J.A. Vol. XIII, at 151.) Petitioner concluded this proposition of law with the statement that "[a]lso, trial counsel failed to object and thus preserve numerous errors at trial, which have been red-flagged through individual propositions of law contained in this brief." (J.A. Vol. XIII, at 153.) The fact that Petitioner tossed in a generic, conclusory allegation of trial counsel error for failing to object, without any specific factual basis underlying the claim, is insufficient to state a claim of ineffective assistance of counsel for not specifically objecting to the introduction of two particular evidentiary exhibits. That is because a petitioner does not fairly present the substance of a claim unless the state courts are afforded sufficient notice and a fair opportunity "to apply controlling legal principles to the facts underlying the constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). A habeas petitioner must present to the state courts both the legal theory and the factual basis of any claim he seeks to present. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987). Accordingly, the Court finds that Petitioner never presented this specific ineffective assistance claim to the state courts, and *Edwards v. Carpenter* thus precludes

this Court from considering it as cause-and-prejudice to excuse the default of the two-subclaims at issue in Petitioner's fourteenth ground for relief. The Court hereby **GRANTS** Respondent's motion to dismiss the sub-claims challenging the introduction of Exhibits 9 and 24 as procedurally defaulted.

**B.      Failure to raise record-based claims on direct appeal**

Respondent argues that Petitioner procedurally defaulted sub-claim E(2) of his first ground for relief, because it was apparent from the face of the record, yet Petitioner presented it to the state courts for the first time during his postconviction proceedings as part of his tenth claim for relief. (ECF No. 78, at PAGEID # 533.) Respondent contends that the state courts denied the claim on the basis of *res judicata*. (*Id.* at PAGEID # 534.) In response, Petitioner offers somewhat conflicting arguments. First, Petitioner argues that this sub-claim is not defaulted because he presented it to the state courts during his direct appeal. (ECF No. 79, at PAGEID # 556-557.) Petitioner goes on to argue, however, that he properly presented this claim in postconviction and supported it with evidence *dehors* the record. (Id. at PAGEID 558-59.) The Court will address his arguments in turn.

In sub-claim E(2) of his first ground for relief, titled Death Penalty Qualification, Petitioner argues that his trial counsel provided ineffective assistance of counsel during voir dire, because they failed to adequately question the prospective jurors regarding their ability to consider and "give effect" to his mitigating evidence. (Petition, ECF No. 13, at ¶¶ 167-87.) Specifically, Petitioner asserts:

> *Voir dire* is a critical part of a[] capital trial. In order to protect a defendant's right to a fair and impartial jury it is essential that counsel conduct an adequate examination of every venire member on the issues of death qualification, both as to exclusion and inclusion on the final jury under *Witherspoon*, the ability of potential jurors to properly consider the specific mitigation evidence to be

presented in the case, the understanding of each individual jurors power to prevent a death sentence solely on his or her individual review of the case.

(ECF No. 13, at ¶172.)   Petitioner argues "[c]ounsel's performance was too short, too oblique, and too perfunctory to serve the critical constitutional purpose of ensuring a fair and unbiased jury capable of performing the important job of deciding whether Mr. Twyford should live or die." (*Id.* at ¶ 185.)

Petitioner first argues that he presented the basis for this claim on direct appeal to the Ohio Supreme Court as part of his first proposition of law.   Petitioner acknowledges that this proposition of law "was admittedly primarily focused upon the limitations placed upon trial counsel by the trial court," but argues that within the proposition of law he referenced "the shortcomings of trial counsel during the restricted voir dire."   (ECF No. 79, at PAGEID # 557.)

A review of the state court record reveals that Petitioner's first proposition of law on direct appeal to the Ohio Supreme Court set forth allegations of trial court error.   Specifically, Petitioner asserted that the trial court erred because the court incorrectly conducted the death qualifying portion of the voir dire.   Petitioner argued:

> 1) The trial court asked a 'death qualifying' question which inadequately assessed the jurors' views on the death penalty; and 2) The trial court refused to allow defense counsel to ask any follow-up questions to the trial court's erroneous death-qualifying inquiry.   The result was that Twyford had absolutely no means of determining whether jurors were predisposed to issuing a death sentence; therefore, he was unable to determine if jurors were subject to a challenge for cause, and he could not effectively exercise his peremptory challenges.

(J.A. Vol. XIII, at 52-68.)   Within that proposition of law, and with respect to trial counsel's performance, Petitioner argued that counsel "sought to reasonably voir dire prospective jurors on their views relating to capital punishment, the facts and circumstances of conviction and mitigating factors.   Judge Olivito, however, abused his discretion by not permitting the

questioning to take place." (J.A. Vol. XIII, at 55.)

Here, it is quite a stretch for Petitioner to contend that the claim of trial court error alleged in his first proposition of law on direct appeal also set forth a colorable claim of trial counsel ineffectiveness, when Petitioner made a point of arguing that his trial counsel attempted to question the prospective jurors but was thwarted by the conduct of the trial court. Moreover, Petitioner's argument fails because claims of trial court error and claims of ineffective assistance of counsel are based on different legal theories. It is well settled that a petitioner must present the same claim to the federal courts in habeas corpus that he presented to the state courts, *Picard v. Connor*, 404 U.S. 270, 275 (1971), and a claim of trial court error is factually and legally distinct from a claim of ineffective assistance of trial counsel. *See Carter v. Mitchell*, 693 F.3d 555, 568–69 (6th Cir. 2012) (holding that "in order to avoid a procedural default, the petitioner's federal habeas petition must be based on the same theory presented in state court and cannot be based on a wholly separate or distinct theory"); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005) (finding that although a freestanding *Batson* claim is related to an ineffective assistance of appellate counsel claim for failing to raise the *Batson* issue, "the two claims are analytically distinct"). Accordingly, this Court finds that Petitioner did not adequately present the legal basis of the ineffective assistance of counsel claim set forth in sub-part (E)(2) to the state courts as part of his first proposition of law on direct appeal, as that proposition of law set forth a freestanding claim of trial court error.

Petitioner also references his eleventh proposition of law on direct appeal to the Ohio Supreme Court, wherein he set forth two specific claims of ineffective assistance of trial counsel. (J.A. Vol. XIII, at 145-53.) At issue is the second claim, wherein Petitioner argued that counsel were ineffective during voir dire because they did not properly explore juror bias regarding the

presumption of innocence, exposure to pre-trial publicity, and the possibility that some jurors were relatives of victims of violent crime. (J.A. Vol. XIII, at 151-53.) Petitioner attempts to persuade the Court that this claim also included the claim of voir dire ineffectiveness set forth in sub-claim (E)(2) of his first ground for relief, wherein Petitioner argues that counsel failed to adequately death qualify the jury. The Court, however, is not so persuaded.

Petitioner's eleventh proposition of law on direct appeal was primarily dedicated to the argument that counsel failed to adequately voir dire regarding the somewhat extensive pretrial publicity and "shocking" details of the case. (J.A. Vol. XIII, at 151.) Petitioner admits as much, noting that "the IAC voir dire claim was predominately focused upon pre-trial publicity." (ECF No. 79, at PAGEID # 557.) Moreover, when the Ohio Supreme Court concisely resolved the claim against Petitioner, it characterized the claim as one involving the argument that "his counsel should have further questioned prospective jurors in voir dire by asking more questions on pretrial publicity, the presumption of innocence, and their status as relatives of crime victims." *State v. Twyford*, 94 Ohio St. 3d 340, 364-65 (2002).

The Court finds that Petitioner's eleventh proposition of law on direct appeal simply did not include any allegations concerning counsel's failure to adequately death qualify the jury, and as such, this Court finds that Petitioner did not present the factual basis underlying sub-claim (E)(2) to the state courts on direct appeal. The Court recognizes that a habeas petitioner is not required to raise his habeas corpus claims using precisely the same language as was used in state court, but a petitioner is required to sufficiently identify the factual basis comprising the claim. Here, the Court simply cannot conclude that the allegations contained in sub-claim (E)(2) are the substantial equivalent of what Petitioner raised on direct appeal.

The Court now turns to Petitioner's second argument, wherein he contends that he properly

49

presented the allegations contained in sub-claim E(2) to the state courts during his postconviction proceedings and supported the claim with evidence *dehors* the record. According to Petitioner, he raised the claim at issue as part of his tenth claim for postconviction relief, (J.A. Vol. V, at 66-68), and in support of the claim, he submitted the affidavit of an attorney expert in the area of voir dire, as well as the affidavit of one of his two trial counsel. (ECF No. 79, at PAGEID # 558; J.A. Vol. V, at 232; J.A. Vol. VI, at 99.) Petitioner argues that because he properly supported his claim with evidence outside the trial record, the court of appeals erred in applying *res judicata* and concluding the claim should have been raised on direct appeal. (ECF No. 79, at PAGEID # 559.)

In his petition for postconviction relief, Petitioner argued, in his tenth claim for relief, that his trial counsel inadequately questioned potential jurors and was unable "to expose those whose strong opinions in favor of the death penalty would render them excludable under *Morgan v. Illinois*, 504 U.S. 719 (1992)," that counsel failed to "learn their attitudes toward the type of mitigating evidence present in this case," and failed to "educate[] the jurors to understand that each juror could consider mitigating evidence he or she found to exist, even if no other juror agreed that the mitigating factor has been established." (J.A. Vol. V, at 66-67.) In support of his arguments, Petitioner referenced two affidavits he submitted in support of his petition for post-conviction relief. The first was the Affidavit of Clive A. Stafford, an attorney expert, attached as Exhibit V. (J.A. Vol. V, at 232.) Attorney Stafford opined that based upon his knowledge of the standard of practice for lawyers in capital cases, Petitioner's trial counsel fell below that standard and failed to engage in a meaningful voir dire which would have enabled them to detect death-prone jurors. Secondly, Petitioner attached the Affidavit of Adrian Hershey, who was one of Petitioner's two attorneys at trial.

The trial court granted the state's motion for summary judgment and rejected all of

petitioner's claims for postconviction relief.   With respect to Petitioner's tenth claim for relief, the trial court simply opined that "[t]he Court has reviewed the record and finds that Defendant's counsel was not ineffective."   (J.A. Vol. VI, at 280-81.)   On appeal, the Seventh District Court of Appeals rejected the claim on the basis of *res judicata*, holding:

> Under his seventh claim, appellant asserted that he was denied his constitutional right to effective assistance because his trial counsel failed to conduct the proper voir dire examination.   In support of this particular claim, appellant attached to his petition the affidavit of Clive Stafford, an attorney from the state of Louisiana who has tried a significant number of death penalty cases.   In this affidavit, Stafford averred that, after reviewing the transcript of appellant's trial, it was his belief that trial counsel had failed to question the potential jurors properly on a number of critical issues.   Stafford further averred that, in his opinion, the failure to conduct an adequate voir dire denied appellant his right to a fair trial.   As to this claim, this court would merely note that, although Stafford's statements were set forth in the form of an affidavit, those statements essentially asserted a legal argument which could have been raised as an assignment of error in his appellate brief on direct appeal from his conviction.   Therefore, appellant's seventh claim was barred under the doctrine of *res judicata*.

*State v. Twyford*, No. 98-JE-56, 2001 WL 301411, at *15 (Ohio App. 7th Dist. Mar. 19, 2001).

The Ohio Supreme Court declined to exercise jurisdiction.

   The first part of the *Maupin* test requires the Court to determine whether a state procedural rule applies to Petitioner's claim and, if so, whether Petitioner violated that rule.   As noted *supra,* claims appearing on the face of the record must be raised on direct appeal or they will be waived under Ohio's doctrine of *res judicata.   State v. Perry,* 10 Ohio St.2d.   Claims that involve matters outside the trial record must be raised and supported by evidence *dehors* the record in state postconviction proceedings.   In order to properly raise a claim in postconviction, the evidence *dehors* the record "must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim[.]"   *Stallings v. Bagley,* 561 F. Supp. 2d

821, 863 (N.D. Ohio 2008) (citing *State v. Lawson,* 103 Ohio App.3d 307 (Ohio App. 12 Dist. 1995)). The evidence at issue must materially support the claim in a manner no record evidence could, such that the claim could not be meaningfully litigated without evidence.

The voir dire conducted in Petitioner's case is part of the trial record. *See Hand v. Houk*, No. 14-3148, 2017 WL 3947732, at *13 (6th Cir. Sept. 8, 2017) ("Hand's claim, based on his trial counsel's performance during voir dire, could have been raised on direct appeal with the evidence contained within the trial record, just as he could have raised his analogous voir dire claim regarding the trial court."). In his state court postconviction proceedings, the only evidence that Petitioner offered in support of this claim that trial counsel were ineffective for failing to properly death qualify the jury was the affidavit of an attorney expert and the affidavit of one of his trial counsel summarizing what happened on the record during voir dire. The Court finds that, at best, the Stafford Affidavit amounts to a notarized argument whereby Stafford applied the facts as they appeared on the record to the applicable body of case law pertaining to claims of ineffective assistance of counsel during voir dire. Such an undertaking, however, does not constitute new evidence or evidence *dehors* the record. *See e.g., Group v. Robinson*, 4:13 CV 1636, 2016 WL 3033408, at *2 (N.D. Ohio May 27, 2016) (finding "the reasonableness of a strategic choice is a question of law to be decided by the court, not a matter subject to factual inquiry and evidentiary proof" and "it would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable") (citing *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998)); *see also Lynch v. Hudson*, 2009 WL 483325, at *18 (S.D. Ohio 2009) (rejecting attorney affidavit as "notarized argument" and collecting Ohio cases holding the same); *State v. Scudder,* 131 Ohio App. 3d 470, 477 (Ohio App. 10th Dist. 1998) (affidavit does not constitute evidence *dehors* the record when affiant "bases his opinion on

evidence that is in fact contained within the transcript of defendant's trial"); *State v. Bies,* No. C–980688, 1999 WL 445692, at *3 (Ohio App. 1st Dist. June 30, 1999) ("[T]he affidavit of the criminal defense attorney reviewing the case does not constitute legitimate new evidence because, as we have previously held, such an affidavit is essentially a notarized argument that could and should have [been] raised on direct appeal."). Accordingly, the Court finds the Stafford Affidavit simply does not provide cogent evidence *dehors* the record sufficient to withstand the application of *res judicata.* Moreover, the affidavit of trial counsel merely summarized the voir dire, did not point to any new evidence that was not already part of the record, and did not amount to an admission of ineffective assistance. (J.A. Vol. VI, at 99.)

The Court finds that the allegations comprising sub-claim (E)(2) of Petitioner's first ground for relief appear on the face of the record, and Petitioner should have raised this claim on direct appeal, as the Ohio Supreme Court could have fairly resolved the claim without resorting to evidence outside the trial record. Thus, Petitioner violated Ohio's doctrine of *res judicata* when he raised this claim in postconviction, and the Court finds the first part of the *Maupin* test has been satisfied. Under the second part of the *Maupin* test, the Court must determine whether the state courts clearly and expressly enforced the procedural default against Petitioner's claim. In this instance, the intermediate appellate court clearly and expressly dismissed Petitioner's claim on the basis of *res judicata, State v. Twyford,* No. 980JE-56, 2001 WL 301411, at *15 (Ohio App. 7th Dist. Mar. 19, 2001), and the Ohio Supreme Court declined to accept jurisdiction over Petitioner's appeal, thereby letting stand the lower court's ruling. (J.A. Vol. VIII, at 144.) Therefore, the Court finds that the second part of the *Maupin* test is satisfied and Petitioner does not appear to argue otherwise. With respect to the third part of the *Maupin* rule, it is well settled that Ohio's doctrine of *res judicata* is an independent and adequate state procedural rule. *Hand v. Houk,* No.

14-3148, 2017 WL 3947732, at *13 (6th Cir. Sept. 8, 2017) ("[I]t is established law in this circuit that an Ohio court's application of the doctrine *of res judicata* is an independent and adequate state ground sufficient to bar habeas relief.")   Because Petitioner does not argue cause and prejudice to excuse the default of this sub-claim, the Court **GRANTS** Respondent's motion to dismiss sub-claim (E)(2) of Petitioner's first ground for relief.

As a final matter, Petitioner notes that the procedural history of his direct appeals and postconviction process was somewhat unusual:

> As an introductory note, it should be noted that because Twyford's initial direct appeal was vacated and re-opened upon the grant of a *Murnahan* application on January 2, 1997, his Merit Brief to the Ohio 7th District Court of Appeals was not filed until March, 1997.   His direct appeal to the Ohio Supreme Court was not filed until March, 1999.   This resulted in a situation in which his state post-conviction was being litigated [i]n September, 1996, well in advance of his direct appeal.   Without any knowledge whether his *Murnahan* application would be granted, (and it is indeed a rarity in Ohio law that it was), it is not surprising that Twyford made efforts to raise his claims in the sole forum available to him at the time, that of state post-conviction.   Thus, rulings by the state court indicating that some post-conviction claims should have been presented on direct appeal need to be considered in the context that Twyford was actively litigating the right to re-open his direct appeal simultaneously.

(ECF No. 79, at PAGEID # 555-56.)   While the Court acknowledges the complexity of death penalty litigation, the procedural history of this case does not diminish Petitioner's obligation under state law to raise his claims in the proper forum.

## C.   Abandoned Claims

Respondent argues that Petitioner abandoned several claims that he first presented to the Seventh District Court of Appeals on direct appeal by not appealing the denial of the claims to the Ohio Supreme Court.   Specifically, Respondent argues that Petitioner abandoned the claims contained in his sixth, eighth, and tenth grounds for relief, and portions of his first and ninth grounds for relief.   With respect to his sixth ground for relief, wherein he argues he was

incompetent to be tried, and his eighth ground for relief, wherein he challenges the failure to change venue due to pretrial publicity, Petitioner "acknowledges that these claims were not litigated through the Ohio Supreme Court on direct appeal." (ECF No. 79, at PAGEID # 560.)

It is well settled that in order to exhaust his claims, a petitioner must fairly present each claim to the highest court of the state where he was convicted. *Baldwin v. Reese,* 541 U.S. 27, 29 (2004). If a claim is not fairly presented, and the time to present the claim to the state court has run, then the claim is deemed procedurally defaulted. *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013); *Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004). This Court may not review a procedurally defaulted claim unless the petitioner can show cause and actual prejudice, or that federal court review is necessary "to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson,* 501 U.S. 722, 748, 111 (1991) (quoting *Engle v. Isaac,* 456 U.S. 107, 135 (1982)). Here, Petitioner, by his own admission, did not present the claims set forth in his sixth and eighth grounds for relief to the Ohio Supreme Court, and he has not attempted to establish cause and prejudice or fundamental miscarriage of justice. Accordingly, the Court hereby **GRANTS** Respondent's motion to dismiss Petitioner's sixth and eighth grounds for relief.

1. **Tenth ground for Relief: Discriminatory use of peremptory challenges**

In his tenth ground for relief, Petitioner argues that the state improperly used peremptory challenges. Respondent argues that Petitioner has procedurally defaulted this claim, because he first raised the claim on the reopening of his direct appeal as his thirteenth assignment of error, (J.A. Vol. X, at 168-72), but failed to appeal the court of appeals' denial of the claim to the Ohio Supreme Court. (ECF No. 78, at PAGEID # 535.)

In response, Petitioner argues that "Respondent has misrepresented the nature of this claim," because his thirteenth assignment of error during his reopened appeal involved a claim

55

challenging the improper exclusion of jurors who had reservations about the death penalty, whereas his tenth ground for relief in habeas argues that the state improperly excluded women. Petitioner goes on to concede that he has never presented his claim regarding the improper exclusion of female jurors to the state courts, but argues that the claim is not defaulted because the ineffective assistance of appellate counsel serves as cause and prejudice to excuse the default. (ECF No. 79, at PAGEID # 561.)

As an initial matter, the Court finds it is Petitioner who is mischaracterizing the nature of his tenth ground for relief. His tenth ground for relief comprises paragraphs 409 through 426 of the habeas petition. (ECF Nos. 13-1, at PAGEID # 74-76; 13-2, at PAGEID # 77.) Petitioner spends the majority of this claim asserting that the state improperly excluded potential jurors who "expressed any hesitation about the death penalty," and that "[t]hese tactics created a hanging jury which was extraordinarily predisposed to impose the death penalty." (ECF No. 13-1, at PAGEID # 76, ¶¶409-419.) It is not until paragraphs 420-426 of the Petition that Petitioner argues the state systematically excluded women from his trial and asserts that "[t]he prosecutor used 6 of his 8 peremptories against women." (ECF No. 13-2, at PAGEID # 77, ¶423.)

To the extent Petitioner argues in his tenth ground for relief that the state improperly excluded from the jury those who expressed hesitation regarding the death penalty, specifically paragraphs 409-419 of the petition, the Court hereby **GRANTS** Respondent's motion to dismiss on the basis that Petitioner has abandoned that argument, and in fact denies making it, and also because it does not appear that he appealed the court of appeals' decision denying that claim for relief to the Ohio Supreme Court.

With respect to the part of Petitioner's tenth ground for relief challenging the prosecution's alleged discriminatory use of peremptory challenges against women, Petitioner admits he has

never presented this claim to the Ohio Courts. As this Court has discussed, if a federal habeas claim is not fairly presented to the state courts, and the time to present the claim to the state court has run, then that claim is deemed procedurally defaulted. *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).

As cause for the default of this claim, Petitioner asserts the "ineffective assistance of appellate counsel, the State Public Defender, who failed to raise the claim in their appellate briefing to the 7th Circuit Court of Appeal[s] and their subsequent appeal to the Ohio Supreme Court on direct review." (ECF No. 79, at PAGEID # 561.) This Court has already concluded, for the reasons set forth in Part IV(A) (3) of this Opinion and Order, that the ineffective assistance of appellate counsel from the Ohio Public Defender's Office – who represented Petitioner during the reopening of his direct appeal and his second appeal as of right to the Ohio Supreme Court – cannot serve as cause to excuse the default of his claims. Accordingly, the Court **GRANTS** Respondent's motion to dismiss Petitioner's tenth ground for relief.

2. **First ground for relief: Ineffective assistance of trial counsel sub-claims C, G, I, M, N**

In his first ground for relief, Petitioner sets forth several claims of ineffective assistance of trial counsel. Respondent argues that sub-claims C (failure to challenge Twyford's competency to stand trial), sub-claim G (failure to challenge jury instructions), sub-claim I (failure to challenge substitution of alternate juror), subclaim M (failure to object to trial court error), and subclaim N (cumulative error), are procedurally defaulted. According to Respondent, although Petitioner raised these claims as part of his reopened appeal before the Seventh District Court of Appeals, he did not appeal the denial of those claims to the Ohio Supreme Court when his reopened appeal was consolidated with his direct appeal. (ECF No. 78, at PAGEID # 535.)

In response, Petitioner argues that he did not default the allegations of ineffective assistance of trial counsel at issue because he presented the underlying errors to the state courts as independent and substantive claims. According to Petitioner, "[b]ecause there could be no demonstration of *Strickland*'s prejudice prong in Twyford's ineffective assistance claim without demonstrating the merits of the underlying claims," it is sufficient for habeas review that he presented the underlying claims to the state courts. (ECF No. 79, at PAGEID # 564.) The Court rejects Petitioner's argument.

As noted earlier, a state criminal defendant who seeks to present federal constitutional claims in habeas is required to first fairly present those claims to the state courts for consideration. 28 U.S.C. § 2254(b)(1). A petitioner "fairly presents" the substance of his federal habeas corpus claim when the state courts are afforded sufficient notice and a fair opportunity to "apply controlling legal principles to the facts underlying the constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Thus, a petitioner must present to the state courts both the legal theory and factual basis of any claim that he seeks to present in habeas corpus. *Picard v. Connor*, 404 U.S. 270, 275-76 91971); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987). In other words, a petitioner must present "the same claim under the same theory" to the state court, *Hicks v. Straub,* 377 F.3d 538, 552 (6th Cir. 2004), and "[i]t is not sufficient that all the facts necessary to support the federal claim were before the court or that the petitioner made a 'somewhat similar' state-law claim." *Gross v. Warden, Lebanon Corr. Inst*., 426 F. App'x 349, 355 (6th Cir. 2011) (citing *Anderson v. Harless,* 459 U.S. 4, 6 (1982)). Here, the underlying claims of error are legally distinct from the claims of ineffective assistance of trial counsel that Petitioner seeks to raise. Accordingly, the court finds that because Petitioner did not fairly present his claims to the state court under the same legal theory, and the time for doing that

58

has passed, his claims are procedurally defaulted. Petitioner does not attempt to establish cause and prejudice to excuse the default of the sub-claims of ineffective assistance of trial counsel that are at issue, with the exception of sub-claim (C).

With respect to sub-claim (C) specifically, wherein Petitioner argues that trial counsel were ineffective for failing to challenge Twyford's competency to stand trial, Petitioner attempts to assert as cause the *Martinez/Trevino* cause and prejudice argument this Court rejected in Part IV(A)(3) of this Opinion and Order. According to Petitioner, his "Rule 26(B) post-conviction counsel was ineffective during the Rule 26(B) collateral proceeding insofar as counsel failed to raise this substantial trial counsel IAC claim notwithstanding that it was apparent on the face of the record and is stronger than other claims counsel did raise." (ECF No. 85, at PAGEID # 638.) This Court has rejected Petitioner's argument that the ineffective assistance of counsel during the reopening of his direct appeal can serve as cause for the default of his claims, because Petitioner had no right to the effective assistance of counsel in a Rule 26(B) reopening of his direct appeal. Because Petitioner has not established cause and prejudice to excuse the defaults of sub-claims C, G, I, M and N of his first ground for relief, the Court **GRANTS** Respondent's motion to dismiss.

3. **Ninth Ground for Relief: Denial of a fair trial, ¶390 and ¶395**

Respondent argues that paragraph 390 of Petitioner's ninth ground for relief, wherein Petitioner argues that the trial court erred by failing to ensure a full record was preserved for appeal, as well as paragraph 395, wherein he argues the trial court failed to prevent improper use of prior bad acts, are procedurally defaulted. Respondent asserts that although Petitioner first raised these claims in his reopened appeal as part of his twentieth and twenty-third assignments of error, he did not appeal the court of appeals' denial of those claims to the Ohio Supreme Court when his reopened appeal was consolidated with his second direct appeal as of right. (ECF No. 78, at

PAGEID # 536.)

In his response, Petitioner acknowledges that upon review of the record, he failed to litigate the claim contained within paragraph 390 to the Ohio Supreme Court.   He does not argue cause and prejudice to excuse his failure to fairly present this claim and accordingly, the Court **GRANTS** Respondent's motion to dismiss paragraph 390 of Petitioner's ninth ground for relief.

With respect to paragraph 395, Petitioner does not refute Respondent's assertion that he failed to appeal the court of appeals' denial of this claim to the Ohio Supreme Court.   Instead, he appears to argue that this claim of trial court error is properly before the Court because it is interrelated with a corresponding claim of prosecutorial misconduct that he did appeal to the Ohio Supreme Court.   Petitioner asserts that "[t]rial court errors and errors of prosecutorial misconduct are analyzed as Due Process claims asserting a denial of Twyford a fundamentally fair trial." (ECF No. 79, at PAGEID # 565.)   This Court does not agree for the reasons discussed in the preceding section of this Opinion and Order.   Claims of trial court error and claims of prosecutorial misconduct are distinct legal claims and the fair presentation of one does not serve to automatically save the other.   Absent a showing of cause and prejudice, which Petitioner has not attempted to do, the Court **GRANTS** Respondent's motion to dismiss paragraph 395 of Petitioner's ninth ground for relief.

### D.   Claims First Raised in Habeas

Finally, Respondent argues that several of Petitioner's claims are defaulted because he failed to fairly present them to the state courts and raised them for the first time in these federal habeas proceedings.   Specifically, Respondent argues that Petitioner failed to fairly present his fifth ground for relief and portions of his first, second, third, ninth, eleventh and sixteenth grounds

60

for relief.[1]

> **1.** **Fifth ground for relief:  Illegal seizure and detention of Twyford and subsequent 'fruits' of an illegal search**

In his fifth ground for relief, Petitioner argues that his initial stop, seizure and detention by law enforcement was unconstitutional, and the fruits of that search, including statements and physical evidence, must be suppressed.   (Petition, ECF No. 13-1, at PAGEID # 57-58.) Respondent argues that Petitioner has never presented this ground for relief to the state courts and has attempted to assert it for the first time in these habeas proceedings.   (ECF No. 78, at PAGEID # 536.)   Petitioner acknowledges that he has not presented this claim to the state courts, but asserts as "cause" for the default of this claim that "his appellate counsel, State Public Defender Bodine, failed to present this claim in either Bodine's brief to the 7th District Court of Appeals, or his brief to the Ohio Supreme Court."   (ECF No. 79, at PAGEID # 567.)   For the reasons discussed in Part IV(A)(3) of this Opinion and Order, the ineffective assistance of appellate counsel on the reopening of Petitioner's direct appeal and on Petitioner's second appeal as of right cannot serve as cause to excuse the default of this ground for ground for relief.   Therefore, the Court **GRANTS** Respondent's motion to dismiss Petitioner's fifth ground for relief.

> **2.** **First ground for relief:  Ineffective assistance of trial counsel**

Respondent argues that Petitioner procedurally defaulted certain sub-claims of his first ground for relief because he failed to present the factual bases for the claims to the state courts for consideration and review.   Specifically, Respondent argues that Petitioner failed to present the

_____

[1] As a housekeeping issue, the Court notes that Respondent initially argued that Petitioner's eighteenth ground for relief was also defaulted, but acknowledged in the Reply that Petitioner had properly preserved this claim for review.   (ECF No. 80, at PAGEID # 608.)

allegations outlined in sub-claim B (IAC for failing to effectively present a voluntary manslaughter defense or defend Petitioner), sub-claim D (improper opening statement), sub-claim F (IAC for failing to challenge the initial seizure and continued detention of Petitioner), sub-claim H (IAC for failing to challenge the presence of alternate jurors in the jury room during deliberations), sub-claim J (IAC for failing to challenge the constitutional validity of the seizure of Petitioner); sub-claim L (IAC for failing to investigate exculpatory test results), and sub-claim M (IAC for failing to object to trial court errors).   (ECF No. 78, at PAGEID # 536.)

In his response, Petitioner argues that the "sum and substance" of his first ground for relief was presented to the state courts.   (ECF No. 79, at PAGEID # 569.)   With respect to sub-claim B, Petitioner argues that trial counsel were ineffective because they did not "mount a defense to the aggravated murder charge based on Mr. Twyford's mental state and motivation for the killing." (ECF No. 13, at PAGEID # 25, ¶105.)   Petitioner asserts that "[c]ounsel expressed the intention to defend Mr. Twyford on the theory that his involvement in the murder of Mr. Franks was the direct result of Mr. Twyford's belief that Franks raped Christina Sonny," yet "[d]espite the clear intent to defend on the fit of passion theory, counsel took no steps to present any evidence to support this defense."   (*Id*. at PAGEID # 25, ¶¶106, 110.)   Petitioner contends he presented these allegations to the state courts during post-conviction, wherein he argued that counsel were ineffective for failing to present evidence about Petitioner's motive for the homicide, as well as his mental state. This Court agrees.   During his postconviction proceedings, Petitioner argued that his counsel were ineffective for failing to call Daniel Eikelberry, his co-defendant, as a witness to testify regarding what he perceived to be the rape of Christina Sonny by the victim of this offense.   In its decision rejecting Petitioner's grounds for relief in post-conviction, the court of appeals spent considerable time discussing the Eikelberry affidavits and how his testimony may have "supported

appellant's contention that the rape had actually occurred and that he had been attempting to avenge or protect the daughter in murdering Franks."   (J.A. Vol. VII, at PAGEID # 318; *State v. Twyford*, No. 98-JE-56, 2001 WL 301411, at *8-9 (Ohio App. 7th Dist. Mar. 19, 2001.) Accordingly, the Court finds that Petitioner did present the "sum and substance" of this claim of ineffective assistance of trial counsel to the state courts during post-conviction and the Court **DENIES** Respondent's motion to dismiss sub-claim B of Petitioner's first ground for relief.

With respect to sub-claim D of his first ground for relief, Petitioner argues his counsel were ineffective during opening statement because they promised to provide an explanation for the murder but then failed to do so.   (ECF No. 13, at PAGEID # 29.)   In response to the motion to dismiss, Petitioner argues that this allegation is inseparably tied to his claim that counsel were ineffective for failing to effectively present a defense, and is the substantial equivalent to his other claims of ineffective assistance of counsel to which Respondent has not asserted default.   This Court agrees, and finds the allegations set forth in sub-claim D are linked to Petitioner's other allegations of ineffective assistance of trial counsel in regard to their handling of the defense theory of the case.   The Court finds that Petitioner presented the substance of this claim as part of his allegations concerning the failure to produce evidence that Petitioner acted in a fit of rage, and the Court **DENIES** Respondent's motion to dismiss sub-claim D of Petitioner's first ground for relief.

In sub-claims F and J, Petitioner argues that his trial counsel were ineffective based on their failure to challenge the initial seizure and continued detention of Petitioner.   In his response to the motion to dismiss, Petitioner acknowledges that he did not present this claim of ineffective assistance of counsel to the state courts, just as he did not present the underlying claim regarding his initial stop and seizure.   Petitioner argues that the ineffective assistance of appellate counsel

during his reopened appeal before the court of appeals serves as cause to excuse this default. For the reasons discussed in Part IV(A)(3) of this Opinion and Order, Petitioner cannot rely on the ineffective assistance of appellate counsel during his reopened appeal as cause to excuse the default of his claims. Accordingly, the Court **GRANTS** Respondent's motion to dismiss sub-claims F and J of Petitioner's first ground for relief.

In sub-claim H, Petitioner argues his counsel were ineffective for failing to challenge the presence of alternate jurors in the jury room during deliberations, and in sub-claim L, Petitioner contends his counsel were ineffective for failing to investigate exculpatory test results. Petitioner acknowledges that he did not present these claims to the Ohio courts and he does not offer cause and prejudice or any argument to excuse the default. As such, the Court **GRANTS** Respondent's motion to dismiss sub-claims H and L from Petitioner's first ground for relief.

Finally, in sub-claim M, Petitioner argues his counsel were ineffective for failing to object to "multiple" trial court errors, and specifically references those allegations set forth in his ninth ground for relief. (ECF No. 13-1, at PAGEID # 44.) Petitioner argues that this ground for relief was properly preserved at the state court level because he argued, as part of his eleventh proposition of law on direct appeal to the Ohio Supreme Court, that his counsel were ineffective, generally, for failing to object at trial. This Court has already determined, in Part IV(C)(2) of this Opinion and Order, that sub-claim M is procedurally defaulted. Moreover, in Part IV(A)(2) of this Opinion and Order, the Court determined that Petitioner's general statements regarding counsel's overall failure to object were insufficient to properly present a constitutional claim. Accordingly, the Court finds Petitioner has defaulted sub-claim M of his first ground for relief and hereby **GRANTS** Respondent's motion to dismiss it from the petition.

3.        **Second ground for relief:   Ineffective assistance of appellate counsel**

In his second ground for relief, Petitioner sets forth several claims of ineffective assistance of appellate counsel on direct appeal.   Respondent argues that sub-claims B, C, D, and F are defaulted because Petitioner failed to present those claims to the state courts.

In sub-claim B, Petitioner argues that appellate counsel failed to challenge the initial seizure and continued detention of Petitioner, and also failed to raise a claim of ineffective assistance of trial counsel for failing to challenge that seizure and detention.   (ECF No. 13-1, at PAGEID # 46.)   In sub-claim C, Petitioner argues appellate counsel failed to raise a claim of ineffective assistance of counsel at trial for failing to object to the trial court's improper unanimity instruction.   (*Id*.)   In sub-claim D, Petitioner asserts that appellate counsel were ineffective because they failed to raise a claim of ineffective assistance of counsel for failing to object to victim impact information, and in sub-claim F, for failing to ensure that Petitioner's *pro se* claims were properly preserved for appellate review.   (*Id*.)

In response, Petitioner argues that his claims of appellate counsel ineffectiveness during his reopened appeal and second direct appeal are not defaulted, because he had no available remedy to present and exhaust those claims.   (ECF No. 79, at PAGEID # 575.)   Petitioner asserts that because he was represented in his second appeal as of right to the Ohio Supreme Court by the same attorneys who represented him in his reopened direct appeal, and because the two appeals were consolidated, he could not have challenged appellate counsels' performance during the reopening without asking counsel to raise their own ineffectiveness.   Given the unique circumstances of this case, Petitioner argues, the Ohio courts should have permitted him to reopen his direct appeal a second time, at the conclusion of his direct appeal to the Ohio Supreme Court. Petitioner contends that his "IAAC claim is entitled to a merits review because, in his unique

situation, there was no viable remedy to present and exhaust the claim and the imposition of a procedural bar was not adequate to sustain the default." (ECF No. 79, at PAGEID # 575.)

The Court notes that the Ohio Supreme Court issued its decision denying Petitioner's consolidated appeal on March 6, 2002. *State v. Twyford*, 94 Ohio St. 3d 340 (2002). Petitioner did not seek to reopen his appeal a second time, via a second application pursuant to Rule 26(B), until after he filed the instant habeas action. Petitioner sought and obtained a stay by this Court in order to pursue a second reopening of his direct appeal, which was denied by the state courts on the basis that Petitioner "was not entitled to file a second application for reopening under App. R. 26(B)." *State v. Twyford*, 106 Ohio St. 3d 176, 177 (2005). The Ohio Supreme Court held that "[o]nce ineffective assistance of counsel has been raised and adjudicated, *res judicata* bars its relitigation." *Id.* The Ohio Supreme Court also concluded that even if Petitioner had a right to file a second application for reopening, his application was untimely and Petitioner failed to show good cause for waiting "more than five years before filing his application." *Id.*

Petitioner argues that this Court should not enforce the default of his claims of ineffective assistance of appellate counsel. Petitioner appears to assert as "cause" that the Ohio courts left him with no viable remedy due to the unique procedural nature of his case. It bears mentioning that the "uniqueness" of his situation is that he is one of a very few death-sentenced defendants who have been given a true second bite at the appellate apple. Petitioner's attorneys from the Ohio Public Defender's Office, the same attorneys Petitioner asserts were ineffective, successfully convinced the intermediate appellate court that Petitioner was entitled to a do-over, and ultimately those attorneys litigated another twenty-five constitutional issues on Petitioner's behalf. The fact that the state courts invoked the procedural bar of *res judicata* to prevent Petitioner from having a third bite at that apple is not something this Court can simply overlook. Moreover, even if the

66

Court permitted Petitioner's "no viable option" argument to serve as cause to excuse the default, something this Court will not do, Petitioner would not be able to establish actual prejudice to excuse the default of this claim.    The Court has determined, in Part IV(A)(3) of this Opinion and Order, that Petitioner had no right to the effective assistance of counsel in his reopened direct appeal, which constitutes a postconviction proceeding.    With respect to Petitioner's argument that the same counsel from the Ohio Public Defender's Office represented him during his reopened direct appeal proceedings as well as his second appeal as of right to the Ohio Supreme Court, this Court notes that Petitioner's federal right to counsel "extends to the first appeal of right, and no further." *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *see also State v. Buell*, 70 Ohio St. 3d 1211, 1212 (1994) (no right to appointed counsel exists on second appeal as of right to Ohio Supreme Court after initial appeal as of right to intermediate court of appeals).    Because Petitioner did not have the right to appointed counsel in these proceedings, he did not have the right to the effective assistance of counsel.    *See, e.g.*, *Tolliver v. Sheets*, 594 F.3d 900, 929 (2010) (noting that under Ohio law, a Rule 26(B) proceeding is a collateral proceeding and "Tolliver therefore has no constitutional right to counsel for the proceeding—and thus certainly had no constitutional right to *effective* counsel").    As such, the Court rejects Petitioner's offer to determine that the state courts acted unjustly by rejecting his successive application for reopening on the basis on *res judicata*.

Accordingly, the Court **GRANTS** Respondent's motion to dismiss sub-claims B, C, D and F of Petitioner's second ground for relief as procedurally defaulted.

### 4.        Third ground for relief: Prosecutorial misconduct

Respondent argues that paragraph 277 (suggesting Petitioner was not credible because he did not testify), and paragraph 279 (presenting character evidence of the victim) of Petitioner's

third ground for relief are procedurally defaulted because the allegations were not presented to the state courts.   The Court has already granted Respondent's motion to dismiss paragraph 277 in Part IV(A)(2) of this Opinion and Order based on Petitioner's failure to preserve the error at trial.

With respect to paragraph 279, Petitioner argues "the prosecutor presented character evidence of the victim, which was irrelevant in the guilt phase.   This aroused the sympathy of the jury and prejudiced petitioner."   (Petition, ECF 13-1, at PAGEID # 54.)   Petitioner argues that this allegation is part of the general claim of prosecutorial misconduct that he raised on direct appeal, wherein he asserted that during the penalty phase, the state made repeated references to improper non-aggravating circumstances such as how the victim was "brutalized" and "dehumanized" in order to induce sympathy for the victim of this offense.   Petitioner argues that his claim is fairly presented as long as it is the substantial equivalent of what he presented to the state courts, and faults Respondent for parsing his prosecutorial misconduct claim into technical and independent sub-parts.   (ECF No. 79, at 584-85.)

The Court acknowledges that a habeas petitioner does not have to present exactly the same claim in habeas as he presented to the state courts so long as the claim he presents is the substantial equivalent of what he presented to the state courts.   The Court finds, however, that a claim of guilt phase prosecutorial misconduct for introducing character evidence of the victim is arguably not quite the same as a claim of penalty phase misconduct for arguing impermissible aggravating circumstances in order to inflame the jury.   Nevertheless, the Court will **DENY** Respondent's motion to dismiss as it relates to paragraph 279 of Petitioner's third ground for relief.   The Court finds that on the whole, Petitioner has fairly presented his claim that the prosecutor engaged in misconduct by attempting to invoke sympathy for the victim.

**5.      Ninth ground for relief:   Denial of a fair and impartial sentencing hearing**

Respondent argues that ten paragraphs of Petitioner's ninth ground for relief are procedurally defaulted because they are "new" claims that Petitioner has first raised in habeas and that he did not fairly present to the state courts.   (ECF No. 78, at PAGEID # 537.)   Specifically, Respondent argues:

> Many of the sub-claims in Twyford's Ninth Habeas Claim are new claims first raised in federal habeas: trial court had at least one meeting with an individual juror (¶ 391); trial court offered to talk with each juror about the case after a verdict was returned in the mitigation phase (¶ 392); trial court did not allow Twyford to attend sidebars (¶ 393); trial court failed to prevent prosecutorial misconduct (¶ 394); trial court failed to prevent improper argument by the prosecutor (¶ 395); trial court permitted alternate jurors to sit in the jury room during guilt phase deliberations (¶ 397); judge had a preconceived belief in Twyford's guilt (¶ 398); trial court denied Twyford an expert to investigate the validity of a not guilty by reason of insanity plea (¶ 404); trial court accepted the withdrawal of the not guilty by reason of insanity plea without proper examination of the validity of the plea (¶ 405); and trial court considered non-statutory aggravating circumstances and refused to consider appropriate mitigation evidence (¶406).

(ECF No. 78, at PAGEID # 537-38.)

In his response, Petitioner concedes that he never presented the sub-claims set forth in paragraphs 391, 392, 393, 398, 404 and 405 of his ninth ground for relief to the state courts. Because Petitioner admits that he failed to properly present those claims, and he does not argue that he has a remaining avenue to present those claims or that cause and prejudice excuses his failure to have presented those claims, the Court hereby **GRANTS** Respondent's motion to dismiss those paragraphs from the habeas petition.   Furthermore, this Court has already granted, in Section IV(C)(3) of this Opinion and Order, Respondent's motion to dismiss paragraph 395.

In paragraph 394, Petitioner argues that the trial court failed to prevent prosecutorial misconduct at his trial.   Petitioner contends that this claim was fairly presented to the state courts

because he properly presented the underlying prosecutorial misconduct claim, and as part of that claim, he "made references, (however passing), to the role of the trial court in preventing misconduct to protect due process." (ECF No. 79, at PAGEID # 586.) This Court does not agree. In order to fairly present a federal constitutional claim to the state courts, a petitioner must present the state courts with both the same factual basis and legal theory. A claim of trial court error is legally distinct from a claim of prosecutorial misconduct, and the presentation of one does not serve to preserve the other. Accordingly, the Court **GRANTS** Respondent's motion to dismiss paragraph 394 of Petitioner's ninth ground for relief.

In paragraph 397, Petitioner argues that the trial court erred by permitting the alternate jurors to sit in the jury room during the trial phase deliberations. Petitioner argues this claim was presented to the Ohio Supreme Court on direct appeal as part of his tenth proposition of law, wherein he argued that his due process rights were violated when the trial court replaced a juror who had deliberated during the guilt phase of his trial with an alternate juror during the mitigation phase of the trial. (ECF No. 79, at PAGEID # 587.) This Court agrees. In his tenth proposition of law on direct appeal before the Ohio Supreme Court, Petitioner challenged the trial court's decision to dismiss Juror Kerr after the guilty verdicts were returned and the Court's decision to replace her with an alternate for purposes of the mitigation hearing. (J.A. Vol. XIII, at 138.) Part of this argument included Petitioner's assertion that "[o]nce Twyford's jury began its deliberations, the trial court should have dismissed the alternate jurors." (*Id*. at 140.) Because Petitioner presented the record-based allegation comprising paragraph 397 on direct appeal to the Ohio Supreme Court, it is properly before this Court for review. The Court **DENIES** Respondent's motion to dismiss paragraph 397.

Finally, in paragraph 406, Petitioner argues the trial court considered non-statutory

aggravating factors and refused to consider mitigating evidence in sentencing Petitioner. (ECF No. 13-1, at PAGEID # 73.) Petitioner argues that this claim was properly presented to the Ohio Supreme Court on direct review as part of his second proposition of law, in which he challenged the trial court's various sentencing phase jury instructions that allowed the jury to consider non-statutory aggravating factors. This Court agrees.

Within his second proposition of law on direct appeal, Petitioner challenged the trial court's independent weighing of the aggravating circumstance and the mitigating evidence. (J.A. Vol. XIII, at 71, 73, 74, 81, 85, 89.) Specifically, Petitioner argued "[t]he jury, trial judge, and appellate court in Twyford's case improperly grouped the aggravating circumstances from both counts of aggravated murder and weighed them against Twyford's single set of mitigating factors." (J.A. Vol. XIII, at 89.) The Court finds, after its own review of the state court record, that the claim set forth in paragraph 406 is encompassed within the claim Petitioner raised on direct appeal, and accordingly, the Court **DENIES** Respondent's motion to dismiss paragraph 406 of Petitioner's ninth ground for relief.

### 6. Eleventh ground for relief: Jury Instructions

Finally, Respondent argues the sub-claim of Petitioner's eleventh ground for relief wherein he argues that the trial court failed to properly instruct on unanimity, as alleged in paragraphs 464-74 of the petition, is procedurally defaulted because Petitioner failed to present the sub-claim to the state courts.

In Response, Petitioner concedes that he never presented the sub-claim challenging the unanimity instruction to the state courts, but argues the ineffective assistance of appellate counsel constitutes cause to excuse the failure to present the claim. Specifically, petitioner again argues that the attorneys who represented him in his reopened appeal and during his second direct appeal

as of right before the Ohio Supreme Court were ineffective for failing to raise the claim challenging the unanimity instruction.   Because this Court has rejected that argument as cause for the default of Petitioner's other claims, specifically as discussed in Part IV(A)(3) of this Opinion and Order, the Court finds Petitioner cannot establish cause for his failure to present this claim of instructional error to the state courts.   If a claim is not fairly presented, and the time to present the claim to the state courts has run, then the claim is deemed procedurally defaulted.   *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013); *Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004). Here, Petitioner cannot establish cause to excuse the default and accordingly, the Court **GRANTS** Respondent's motion to dismiss paragraphs 464-74 of Petitioner's eleventh ground for relief.

   **7.       Sixteenth ground for relief:   Ineffective assistance of counsel at mitigation**

   In his sixteenth ground for relief, Petitioner sets forth several claims of ineffective assistance of trial counsel at mitigation.   Respondent argues that sub-claims (A)(2) and (B) are procedurally defaulted because Petitioner failed to present the allegations to the state courts.

   In subclaim (A)(2), Petitioner argues that trial counsel were ineffective during mitigation because they failed "to correct their error from the trial phase" concerning the testimony of Sheriff Abdalla that Petitioner had engaged in sexual misconduct with Christina and Terri Sonny. (Petition, ECF No. 13-2, at PAGEID # 102, ¶¶ 535-543.)   Specifically, Petitioner argues "[i]t was accepted and understood by everyone in this case that Christina suffered from mental retardation. What was never explored by defense counsel was whether Christina was competent to relate any allegations against Mr. Twyford."   (*Id.* at PAGEID # 102.)

   In response, Petitioner argues he properly presented this claim to the state courts and asserts the allegations in sub-claim (A)(2) are intertwined with his other claims of ineffective

assistance of trial counsel. Specifically, Petitioner argues this sub-claim is related to his argument that counsel were ineffective during cross-examination of the Sheriff, and also in failing to present evidence regarding Christina Sonny's mental state. The Court agrees, and finds that on the whole, Petitioner's allegations concerning counsel's failures with respect to the testimony by the Sheriff are intertwined with other claims of attorney error that are properly before the Court. Accordingly, the Court **DENIES** Respondent's motion to dismiss sub-claim (A)(2) of Petitioner's sixteenth ground for relief.

In sub-claim (B), Petitioner sets forth a claim of "cumulative impact" based on his trial "counsels' deficiencies." (Petition, ECF No. 13-2, at PAGEID # 105.) Petitioner argues that this claim is properly before the Court, because "[a]s a practical matter, in analyzing an IAC claim, counsels' error are considered cumulatively." (ECF No. 79, at PAGEID # 592.) Additionally, Petitioner argues he presented his cumulative trial counsel error claim on direct appeal to the Ohio Supreme Court when he argued that "trial counsel's errors, individually and cumulatively, deprived Twyford of a trial the result of which was reliable." (ECF No. 79, at PAGEID # 593; J.A. Vol. XIII, at 153.)

Respondent argues this claim is defaulted because Petitioner failed to present an independent and freestanding claim of cumulative trial counsel error to the state courts. The Court determines that to the extent Petitioner's "cumulative" deficiency claim pertains to non-defaulted allegations of trial counsel ineffectiveness that are properly before the Court for review, the claim itself is properly before the Court. The Court **DENIES** Respondent's motion to dismiss sub-claim (B) of Petitioner's sixteenth ground for relief.

## V.    Conclusion

For the foregoing reasons, the Court **GRANTS** Respondent's motion to dismiss with respect to Petitioner's fifth, sixth, eighth, tenth, and twelfth grounds for relief in their entirety. Furthermore, the Court **GRANTS** Respondent's motion to dismiss as it relates to the following sub-claims or paragraphs:   Sub-claims C, E(2), F, G, H, I, J, L, M and N of Petitioner's first ground for relief, sub-claims B, C, D, and F of Petitioner's second ground for relief, paragraphs 277-278 and 280-283 of Petitioner's third ground for relief, paragraphs 390-395, 398, 404 and 405 of Petitioner's ninth ground for relief, paragraphs 446-458 and 464-74 of his eleventh ground for relief, and the sub-claims challenging the introduction of Exhibits 9 and 24 in Petitioner's fourteenth ground for relief.

The Court **DENIES** Respondent's motion to dismiss sub-claims (B) and (D) of Petitioner's first ground for relief, paragraph 279 of Petitioner's third ground for relief, paragraphs 397 and 406 of Petitioner's ninth ground for relief and sub-claims (A)(2) and (B) of Petitioner's sixteenth ground for relief.

**IT IS SO ORDERED.**

      **s/Algenon L. Marbley**
      **ALGENON L. MARBLEY**
      **United States District Judge**

**Date:    September 27, 2017**