IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RAYMOND A. TWYFORD, III,

      Petitioner,

      v.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,

      Respondent.

Case No. 2:03cv906
Chief Judge Algenon L. Marbley
Chief Magistrate Judge Deavers

**OPINION AND ORDER**

      Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 18 U.S.C. § 2254. This matter is before the Court upon Petitioner's Motion to Transport for Medical Testing, (ECF No. 106), Respondent's opposition, (ECF No. 107), and Petitioner's Reply, (ECF No. 108.)

      Petitioner seeks an Order from this Court directing his custodian, the Warden-Respondent, to transport Petitioner to The Ohio State University Medical Center for neurological imaging, to include a PET-CT scan. Petitioner states he has been evaluated by neurologist Dr. Douglas Scharre, director of the Cognitive Neurology Division at The Ohio State University Medical Center, and following that evaluation, Dr. Scharre recommended Petitioner undergo further testing. (ECF No. 106, at PageID 7021.) According to Petitioner, "Dr. Scharre suspects that Mr. Twyford may suffer from neurological defects due to childhood physical abuse, alcohol and drug use, and a self-inflicted gunshot wound to the head during an adolescent suicide attempt. Numerous lead metal fragments from the gunshot wound remain lodged in Mr. Twyford's head." (*Id*. at PageID 7021.) Petitioner surmises the additional medical testing is not

only necessary for Dr. Scharre to assist in his defense, but is also crucial to Counsel's ability to investigate, present and develop Petitioner's claims in his petition for habeas corpus relief. (*Id*. at PageID 7021-22.) Additionally, Petitioner explains he is not seeking formal discovery or funding by the Court, as he is represented by the Capital Habeas Unit of the Federal Public Defender's Office for the Northern District of Ohio, who will cover the cost of the scans. (*Id*. at PageID 7022.) According to Petitioner, although the Federal Public Defender has the financial resources available to obtain the necessary scans, "in order to make proper use of those services," he needs a court order compelling his conveyance to a proper medical facility where the testing can be conducted. (*Id*.) Finally, Petitioner notes "[a]s the official prison hospital, The Ohio State University Medical Center has the security and other infrastructure to accommodate any concerns of Respondent." (*Id*.)

Respondent opposes Petitioner's motion for an order to transport, arguing this Court lacks jurisdiction to order Respondent to transfer Petitioner for medical testing. (ECF No. 107, at PageID 7089.) Additionally, Respondent asserts Petitioner's request for transport amounts to a motion for discovery that should be precluded at this stage of the proceedings by *Cullen v. Pinholster*, 563 U.S. 70 (2011), which held a federal court's review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. (*Id*. at PageID 7091.) The Court will address these arguments in turn.

With respect to the threshold matter of jurisdiction, Respondent argues "the federal district court lacks jurisdiction in a 2254 proceeding to issue a writ *ad testificandum* to compel Twyford's custodian to take Twyford to the place where Twyford would seek to have physical evidence in the form of scans of his brain produced and then have the results utilized by him in a collateral attack on his state court conviction and death sentence." (*Id*. at PageID 7089.)

2

Respondent posits that while this Court has the power "to compel persons or things to appear before the Court, in the place where the Court is convened, for the purpose of facilitating the adjudication of a 2254 action by the Court," the Court does not have jurisdiction "to facilitate his effort to create new evidence to be utilized in a collateral attack of his state court conviction and sentence." (*Id*. at PageID 7091.) According to Respondent, "[t]his sort of foray into the world at large on a quest to obtain new evidence in hopes to enhance his success in a 2254 action is outside the jurisdiction of the Court." (*Id.*)

"In determining the scope of a district court's jurisdiction," the Court of Appeals for the Sixth Circuit has explained, "our starting point is that the lower federal courts are courts of limited jurisdiction and possess only those powers granted to them by Congress." *Baze v. Parker*, 632 F.3d 338, 341 (6th Cir. 2011) (citing *Finley v. United States*, 490 U.S. 545, 550 (1989) (quoting *Aldinger v. Howard*, 427 U.S. 1, 15 (1976)). Federal courts are to infer jurisdiction narrowly, especially "where an expansion of jurisdiction would implicate federalism concerns." *Baze*, 632 F.3d at 341 (citing *United States v. Bass*, 404 U.S. 336, 349 (1971)). The Sixth Circuit went on to explain that "[f]ederalism concerns are particularly strong in criminal matters, and, absent a clear directive from Congress or the Constitution, a federal court should be loath to assume jurisdiction to interfere with state criminal proceedings, including postconviction proceedings." *Baze*, 632 F.3d at 341 (citations omitted).

Here, Petitioner seeks an Order from this Court to compel the Warden of the Chillicothe Correctional Institution where Petitioner is currently held, to arrange the transportation of Petitioner and convey him to The Ohio State University Medical Center for neurological imaging. Petitioner argues this Court has jurisdiction to enter an order for transport pursuant to the All Writs Act, which provides, in relevant part, "[t]he Supreme Court and all courts

established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

Petitioner's request for an order to transport is not the first instance in this district wherein a death-sentenced habeas petitioner has sought a federal court order to be transferred for neurological imaging and testing. In *Elmore v. Warden,* Case No. 1:07-cv-776, 2019 WL 5704042 (S.D. Ohio Nov. 5, 2019), United States District Judge Edmund A. Sargus, Jr., recently found that a federal district court possesses jurisdiction in a habeas proceeding to order the warden to transport a petitioner for testing. In finding jurisdiction, Judge Sargus determined the All Writs Act empowers a federal district court to issue an order for transport when "the evidence-collection that that order will facilitate would aid this Court in its existing habeas corpus jurisdiction to assess the constitutionality of Petitioner's incarceration." *Elmore*, Case No. 1:07-cv-776, 2019 WL 5704042, at *5. In reaching this determination, Judge Sargus drew a distinction between requests for transport in connection with a habeas corpus proceeding wherein the testing may "be necessary in aid of the Court's congressionally granted habeas corpus jurisdiction to determine the legality of Petitioner's incarceration by assessing the merits of his constitutional claims," and similar requests to order state action made in connection with a district court's much more limited role in a state clemency proceeding. *Id*. at *5. In drawing this distinction, Judge Sargus analyzed the Sixth Circuit's decision in *Baze v. Parker*, 632 F.3d 338, 341 (6th Cir. 2011), wherein the Sixth Circuit held that neither the federal funding statute set forth in 18 U.S.C. § 3599, nor the All Writs Act, gave a district court jurisdiction to grant Baze's request for an order requiring a state correctional facility to allow Baze to interview correctional personnel and inmates, in connection with his pursuit of state clemency. In that case, the Sixth Circuit noted that the All Writs Act provides federal courts only with the authority to issue writs

4

in aid of their respective jurisdictions, and does not serve as an independent source of jurisdiction. The Sixth Circuit concluded that "jurisdiction to appoint and fund counsel for a state clemency proceeding is not, as Baze would have it, bundled with jurisdiction to oversee the state clemency proceeding itself." *Baze*, 632 F.3d at 346. In distinguishing *Baze*, Judge Sargus found persuasive the fact that Elmore's case did not involve the federal court's much more limited role in connection with a state clemency proceeding, but instead was before the court in habeas corpus, as "[t]hat distinction is pivotal to the determination of whether the All Writs Act empowers this Court to order the relief Petitioner seeks." *Elmore*, Case No. 1:07-cv-776, 2019 WL 5704042, at *4.

Finally, Judge Sargus addressed – and distinguished – a pair of unreported decisions out of the Northern District of Ohio reaching a different result on this issue, in the context of a habeas corpus proceeding:

> In *Trimble v. Bobby*, Case No. 5:10-cv-149, 2011 WL 900997 (N.D. Ohio Mar. 14, 2011), the district court held, in the context of an ongoing habeas corpus proceeding, that *Baze v. Parker* compelled a finding that neither §3599 nor the All Writs Act empowered the district court to order Trimble's transport for neurological testing in support of his claim of mitigation-phase ineffective assistance of counsel. On a motion for reconsideration, the district court expressly rejected Trimble's argument that *Baze* was distinguishable because it was decided in the context of a state clemency proceeding as opposed to an ongoing habeas corpus proceeding. *Trimble v. Bobby*, Case No. 5:10-cv-149, 2011 WL 1527323, at *1-2 (N.D. Ohio April 19, 2011). Specifically, the district court noted that because consideration of the new evidence (results of neurological testing) would be precluded by *Cullen v. Pinholster*, 563 U.S. 170 (2011), ordering Trimble's transport for the purpose of gathering evidence that could not be considered would not be in aid of the Court's § 2254 jurisdiction. *Id.* at *2-3. This Court disagrees for two reasons.
> First, this Court is of the view that the district court's reasoning above conflates two distinct issues: one, whether ordering transport to collect new evidence would on its face be in aid of the federal court's duty to determine the constitutionality of the movant's incarceration; and two, whether the federal court ultimately can consider that new evidence. Magistrate Judge Merz recognized that distinction as well, holding that the reason for which Petitioner sought transport— to obtain neurological test results—would be in aid of the Court's jurisdiction to

5

adjudicate Petitioner's ineffective assistance claim but then ultimately holding that transport was nonetheless not warranted because it appeared that procedural default would preclude the Court from considering the merits of the claim and thus any new evidence supporting it. That is, in Magistrate Judge Merz's analysis, the secondary issue of whether the Court could ultimately consider results of the neurological testing did not inform the threshold issue of whether ordering transport to obtain those results would on its face be in aid of the Court's habeas jurisdiction.

*Elmore*, Case No. 1:07-cv-776, 2019 WL 5704042, at *4-5.

For the reasons set forth above and more fully outlined in the *Elmore* decision, this Court agrees that it possesses jurisdiction via the All Writs Act to order the transport of Petitioner for neurological testing and imaging, as such imaging may aide this Court in the exercise of its congressionally mandated habeas review. Having determined this Court has jurisdiction to order Petitioner's transport, the Court must now determine whether Petitioner has sufficiently demonstrated a need for obtaining the testing he seeks, and whether the Court should issue an order to transport in this case.

Petitioner seeks an order to transport, because his defense expert, Dr. Scharre, has requested a CT/FDG-PET scan in order to complete his evaluation of Petitioner. Dr. Scharre suspects Petitioner may suffer neurological defects resulting from childhood abuse, alcohol and drug use, and a self-inflicted gunshot wound to the head during an adolescent suicide attempt. (ECF No. 106, at PageID 7021.) After reviewing Petitioner's past medical records, Dr. Scharre notes that a "CT sinus series in 1996 by my review revealed 20-30 multiple metal fragments scattered in his nasion, right orbital and ethmoid sinus regions. There is not a clear view of his frontal lobes or the rest of his brain." (ECF No. 106-2, at PageID 7088.) Dr. Scharre continues, noting that "[t]he CT portion is required for the PET scan and will show the full extent of metal fragments and exactly where in relation to the brain they extend. The PET portion of the scan will reveal how the brain is functioning and if there is evidence particularly of frontal lobe

damage from either physical trauma or drug use." (*Id.*)

Additionally, counsel for Petitioner argue the testing is crucial to their investigation of this case, as well as their ability to assist Petitioner with the development and presentation of his claims in his petition for habeas corpus relief. (ECF No. 106, at PageID 7021-22.). Specifically, counsel argue:

> Given the issues in Mr. Twyford's petition relating to his family history, mental health issues, and the impact of his suicide attempt (see Claims for Relief Nos. 1 (Ineffective Assistance of Counsel), 4 (Involuntary and Coerced Statement), 6 (Competency to Stand Trial), 16 (Ineffective Assistance of Counsel at Mitigation), 17 (Ineffective Assistance of Expert), 18 (Denial of Right to Present Mitigation Evidence)), it is plausible that the testing to be administered is likely to reveal evidence in support of Mr. Twyford's claims. Additionally, this investigation could plausibly lead to the development of evidence and materials in support for any challenges to the Warden's claims of procedural default or exhaustion."

(*Id.* at PageID 7026.)

With respect to Respondent's argument that Petitioner's request for transport amounts to a request for discovery that should be precluded by *Cullen v. Pinholster*, 563 U.S. 70 (2011), Petitioner states as follows:

> Twyford is not seeking discovery from the State or any entity. Rather, he is seeking material encased within his own body. Twyford's motion in no way compels the State to disclose evidence or in the language of *Baze v. Parker*, 'to stand down.' This Court clearly has jurisdiction to ensure that Twyford and his appointed counsel, are able to properly and fully investigate and litigate his habeas petition.

(ECF No. 108, at PageID 7095.)

The Court finds an Order to Transport for medical testing to facilitate the completion of Dr. Scharre's evaluation of Petitioner is warranted and necessary, and the evidence-collection that this Order will facilitate could aid the Court in its existing habeas corpus jurisdiction to assess the constitutionality of Petitioner's incarceration. The fact that Petitioner has multiple

bullet fragments that remain lodged in his brain weighs in favor of this Court issuing an Order to Transport. The Court cautions counsel, however, that the Court does not find itself in a position at this stage of the proceedings to make a determination as to whether or to what extent it would be precluded by *Cullen v. Pinholster* from considering any evidence in connection with Dr. Scharre's evaluation, including whether that information could be considered for any other purpose such as revisiting procedural default.

For the foregoing reasons, the Court **GRANTS** Petitioner's Motion for an Order to Transport. (ECF No. 106.) However, in light of the exigent circumstances brought about by the COVID-19 pandemic, the Court **HEREBY STAYS** this Order for thirty (30) days.

**IT IS SO ORDERED.**

                                         __s/Algenon L. Marbley_____
                                         **ALGENON L. MARBLEY**
                                         **Chief United States District Judge**

**DATED: March 19, 2020**